In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Eli FRANK, Attorney at Law.

Supreme Court

*No. 96–0419–D. Filed December 20, 1996.*

(Also reported in 556 N.W.2d 717.)

PER CURIAM. We review the findings of fact and conclusion of law of the referee concerning the professional misconduct of Attorney Eli Frank that resulted in his conviction in federal court on a guilty plea to one felony count of conspiring to commit bank

fraud. The referee recommended that the court publicly reprimand Attorney Frank for that misconduct.

The facts that led to Attorney Frank's criminal conviction were never in dispute, as evidenced by his guilty plea in federal court, the stipulation he entered into with the Board of Attorneys Professional Responsibility (Board) in this proceeding, and the uncontroverted testimony of the witnesses at the disciplinary hearing. Further, the parties agreed that Attorney Frank's conduct constituted the commission of a crime that adversely reflects on his honesty and trustworthiness as a lawyer, in violation of SCR 20:8.4(b).[1] Accordingly, we adopt the findings of fact and conclusion of law set forth in the referee's report.

The matter left for decision, then, is the appropriate discipline to impose on Attorney Frank for his professional misconduct. The public reprimand recommended by the referee is an insufficient response to the seriousness of that misconduct, although it reflects the referee's careful exposition, analysis, and application of numerous factors that mitigate the seriousness of that misconduct and the severity of discipline to be imposed for it. In light of those mitigating factors discussed below and the factual posture of the case presented, we determine that the proper disposition of this proceeding is the suspension of Attorney Frank's license to practice law for a period of 90 days.

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

While a longer license suspension or even license revocation might be the appropriate disciplinary response to a lawyer's conviction of felony conspiracy to commit bank fraud in the abstract, the circumstances particular to this case are such as to require less severe discipline. Attorney Frank's participation in the fraud occurred after the fraud had been perpetrated by one of his clients, and the part he took in it was passive in nature, consisting of his failing to act to remedy the fraud after learning of it and realizing he had been the unwitting recipient of its proceeds. Nonetheless, Attorney Frank's professional misconduct is serious: after becoming aware that his professional position was used by a client to obtain loan funds fraudulently and that the client had used those funds to make partial payment of his law firm's legal fees, Attorney Frank did nothing to set right the wrong his client had committed, acquiescing thereby in his and his law firm's benefit from it. The discipline we impose also takes into account mitigating factors concerning Attorney Frank's character and reputation and the length of time the procedure initiated by the parties in this proceeding has necessitated to reach a determination.

Attorney Frank was admitted to the practice of law in Wisconsin in 1965 and practiced in Milwaukee until July 31, 1995, when he resigned from the law firm in which he was a partner in anticipation of criminal charges being filed against him in federal court. He has not been the subject of a prior disciplinary proceeding.

Following his conviction in November, 1995, Attorney Frank and the Board entered into a stipulation of facts and conclusion of law concerning the criminal conduct and to the imposition of a 90-day license suspension as discipline for it. The stipulation recited only the following facts.

Attorney Frank and the law firm in which he then practiced were principal legal counsel for a real estate developer, Frank Crivello, from 1990 to 1993. During that time, Mr. Crivello and his employes used a fraudulent scheme to obtain proceeds of a loan Mr. Crivello had obtained for a construction project. They used letterhead stationery of Attorney Frank's law firm that Attorney Frank had allowed the client to keep in his offices to fabricate two invoices for legal services relating to the construction project and submitted them to the lender bank for payment. The invoices totaled $44,020.

Attorney Frank was not aware of the fabricated invoices prior to their being submitted to the bank. At the time they were submitted, his law firm had performed services related to the client's construction project that totaled only $3089. Attorney Frank was aware of the balance of services rendered in that matter when he received $44,020 in payment, and he credited the difference, $40,931, to fees owed by the client for services the law firm had provided in other matters.

The parties further stipulated that the prosecutor's office reported that Attorney Frank was fully cooperative with the government in the criminal matter and that he promptly notified the Board of the federal charge before it became public. Attorney Frank pleaded guilty to one felony count of conspiring to commit bank fraud, and the court placed him on five years' probation, ordered him to serve six months in a halfway house with work release privileges, perform 500 hours of community service, and pay restitution in the amount of $40,931, and fined him $10,000.

We considered those limited facts in the stipulation filed with the Board's complaint at the

commencement of this proceeding and determined that they did not support the discipline to which the parties had agreed. Accordingly, we rejected the stipulation and, pursuant to SCR 21.09(3m),[2] directed the matter to proceed before a referee. In the subsequent proceeding, Attorney Frank stipulated to the misconduct allegations set forth in the Board's complaint, and the disciplinary hearing addressed for the most part the issue of discipline to be recommended. The referee, Attorney Jean DiMotto, made findings of fact based on the testimony of the witnesses at the hearing, including the following.

When Attorney Frank was first retained by Mr. Crivello in the late 1980's, he and another lawyer in his firm undertook the client's small claims work. Because the firm did not have sufficient secretarial staff to deal with the high volume of that work, Mr. Crivello allowed the attorneys to use the secretaries in his office for it. Attorney Frank provided those secretaries small claims forms, stationery and other materials, including his firm's letterhead stationery, for their preparation of court documents and correspondence. Attorney Frank

---

[2] SCR 21.09 provides, in pertinent part:

**Procedure.**

. . .

(3m)  The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

had no reason to believe the stationery he had provided to Mr. Crivello's staff was being misused or that any remaining stock had not been returned to him when he ceased to do the small claims work for Mr. Crivello.

After Mr. Crivello received payment of the fabricated invoices from the lender, he gave Attorney Frank two checks written on his regular business account totaling $44,020 and told him to apply them to unpaid fees in an unrelated matter for which services already had been rendered. At the time that payment was made, Mr. Crivello's total unpaid legal fees with Attorney Frank's firm exceeded $600,000, and Attorney Frank had been insisting that he make some payment on that balance, as his partners had been pressuring him to obtain payment from Mr. Crivello.

Each of the two checks Attorney Frank received from Mr. Crivello had noted on it the name of the city in which the construction project was located. When the law firm's staff called that to his attention, Attorney Frank assumed it was an internal matter in Mr. Crivello's operation and directed the staff to apply the payment to the account Mr. Crivello had specified.

In early 1992, before the fraudulent billing had become known, Attorney Frank's law firm ceased representing Mr. Crivello. Attorney Frank did not learn of the fraud until the following year, when he was contacted by a lawyer representing the lending banker in an unrelated court proceeding in which Mr. Crivello was the principal witness against the banker. That attorney asked Attorney Frank for copies of documents that were listed in the description of services on the fabricated invoices. When Attorney Frank telephoned the attorney then representing Mr. Crivello in a pending criminal investigation to obtain permission to respond to that request for documents, he was told not

to give any information to the banker's attorney or send him any documents. The first Attorney Frank knew of the fraudulent billing was when the banker's attorney sent him a copy of the fabricated invoices to supplement his request for the documents. After receiving a copy of those bills, Attorney Frank telephoned Mr. Crivello and remonstrated over the fraudulent billing.

Attorney Frank testified at the disciplinary hearing that he did not know why he did nothing after learning that his law firm stationery had been used to obtain loan proceeds fraudulently and that he unknowingly had accepted those proceeds and applied them to Mr. Crivello's unpaid legal bills. He asserted, however, that his failure to act to correct the matter was in part the result of having been told by Mr. Crivello's attorney that any information or documents he might have regarding the matter were protected from disclosure by the attorney-client privilege.

The referee also made findings concerning factors mitigating the severity of discipline Attorney Frank's misconduct warrants. Among those factors are Attorney Frank's full cooperation with the federal prosecutor in his criminal proceeding and with the Board in its disciplinary investigation, his sincere remorse for his failure to correct the fraud his client had committed and from which he and his firm unwittingly had benefited, his stature in the legal community, where he has been a highly respected practitioner for more than 30 years, and his extensive civic and charitable work. Notwithstanding that Attorney Frank and the Board had taken the position in the disciplinary proceeding that a 90-day license suspension would be appropriate discipline to recommend for his professional misconduct, the referee determined, on the basis of all the circumstances, that a public repri-

mand would be sufficient to deter Attorney Frank from further misconduct and to protect the public.

Having reviewed the referee's report, the court remained concerned, as it had been when presented with the parties' stipulation at the commencement of this proceeding, that there were not sufficient facts in the record on the basis of which it might determine the appropriate discipline to impose for Attorney Frank's misconduct. Consequently, the court ordered the record supplemented with a copy of the transcript of the sentencing hearing in Attorney Frank's criminal proceeding. That transcript amplified some of the mitigating factors the referee had considered and set forth the federal court's concerns in determining the sentence imposed, but it did not add to the facts concerning Attorney Frank's misconduct itself.

We have, then, a less than thorough factual record, largely as the result of Attorney Frank's guilty plea and his stipulations in this disciplinary proceeding. The facts we do have, however, lead us to conclude that, while his failure to take corrective action when he learned he had been used by a client to perpetrate a fraud and had been paid with the proceeds of that fraud raises serious question of his honesty and trustworthiness as a lawyer, the circumstances under which Attorney Frank participated in the fraud—the unauthorized use of his law firm stationery, his unwitting acceptance of fraudulently-obtained loan proceeds in payment of the client's outstanding legal bills, his failure to take action to correct the fraud when he learned of it some two years later—do not call for the severity of discipline that active participation or acquiescence in the perpetration of the fraud would have warranted.

Also, the mitigating factors, in particular Attorney Frank's professional reputation in the legal community

240

during 30 years of practice and the extensive evidence of his personal and professional character that strongly suggest that his misconduct was an isolated lapse, indicate a disciplinary sanction less severe than what we would expect to impose for conduct that led to a lawyer's felony conviction.

Furthermore, Attorney Frank voluntarily ceased practicing law July 31, 1995, as he anticipated that federal criminal charges would be filed against him, and he has not practiced law since that time. Had the stipulation of the parties filed at the commencement of this proceeding on February 14, 1996 set forth all of the facts ultimately elicited in the proceedings before the referee and by our recourse to the federal sentencing transcript, we would have reached the determination of this matter and would have imposed discipline by the end of March, 1996. Instead, the absence of sufficient facts led to our rejection of that stipulation on March 7, 1996 and further proceedings ensued. Additional proceedings were necessary even after the referee's report was filed May 28, 1996, and more time was consumed in obtaining a copy of the federal sentencing transcript for inclusion in the record and in affording the parties the opportunity to respond to it. Because of the long delay over which Attorney Frank had no control and his voluntary cessation of legal practice, Attorney Frank has already incurred significant consequences equivalent to license suspension for the past nine months.

On the basis of all of the circumstances before us, including the nine-month license suspension equivalent, we determine that an additional 90-day suspension of Attorney Frank's license to practice law, to commence at the issuance of this order, is the proper disposition of this proceeding.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

IT IS ORDERED that the license of Eli Frank to practice law in Wisconsin is suspended for a period of 90 days, effective the date of this order.

IT IS FURTHER ORDERED that within 60 days of the date of this order Eli Frank pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Eli Frank to practice law in Wisconsin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Eli Frank comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.