IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Bruce J. MEAGHER, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Bruce J. MEAGHER, Respondent.

Supreme Court

*No. 03–1185–D. Decided October 8, 2003.*

2003 WI 132

(Also reported in 669 N.W.2d 733.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Bruce J. Meagher and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12,[1] which sets forth findings of fact and conclusions of law regarding Attorney Meagher's professional misconduct. The parties stipulated to a six-month suspension of Attorney Meagher's license to practice law in Wisconsin, to be imposed retroactive to the date of his temporary suspension, November 12, 2002.

¶ 2. We accept the parties' stipulation and recommendation that a suspension of six months, imposed retroactively, is appropriate discipline for Attorney Meagher's misconduct.

¶ 3. Attorney Meagher was admitted to practice in 1980. On November 12, 2002, Attorney Meagher's license to practice law in Wisconsin was temporarily

---

[1] SCR 22.12 provides: Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

suspended, pursuant to SCR 22.20(1), in connection with his conviction for violation of a federal wire wagering law. That conviction forms the basis for one of the counts of misconduct described herein.[2] Attorney Meagher has no other disciplinary history.

¶ 4. On May 2, 2003, the OLR filed a complaint against Attorney Meagher, which alleged two counts of misconduct. The complaint alleged that Attorney Meagher represented a client when the representation of that client was directly adverse to another client without reasonably believing the representation would not adversely affect the relationship with the other client and without obtaining each client's written consent in violation of SCR 20:1.7(a).[3] The complaint further alleged that Attorney Meagher engaged in criminal conduct that reflects adversely on the lawyer's

---

[2] SCR 22.20(1) provides:

> Summary suspension. Upon receiving satisfactory proof that an attorney has been found guilty or convicted of a serious crime, the supreme court may summarily suspend the attorney's license to practice law pending final disposition of a disciplinary proceeding, whether the finding of guilt or the conviction resulted from a plea of guilty or no contest or from a verdict after trial and regardless of the pendency of an appeal.

[3] SCR 20:1.7(a) provides: "A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents in writing after consultation."

honesty, trustworthiness or fitness as a lawyer in other respects in violation of SCR 20:8.4(b).[4]

¶ 5. On or about May 20, 2003, the OLR and Attorney Meagher filed a stipulation pursuant to SCR 22.12, in which Attorney Meagher stipulated to the misconduct charged in the OLR's complaint and to the sanctions sought by the OLR.

¶ 6. The facts giving rise to the violation of SCR 20:1.7(a), relating to Attorney Meagher's representation of a client despite the existence of a conflict of interest are set forth in the stipulation, and described herein.

¶ 7. Kenneth Flannery (Flannery) is a Minnesota businessman who sold benefit and payroll services. Flannery had an ongoing attorney-client relationship with Attorney Meagher. Steve Haskins (Haskins) is a Minnesota businessman who was a consultant for and provider of employee benefits programs.

¶ 8. In January 1998 Flannery and Haskins asked Attorney Meagher to represent them in a joint business venture to develop an employee benefits software program. Attorney Meagher was hired to set up one or more limited liability corporations (LLCs), intended to merge the businesses of Flannery and Haskins. Attorney Meagher filed Minnesota Articles of Organization to create two new LLCs for Flannery and Haskins, for operation of the joint business venture.

¶ 9. On January 28, 1998, Attorney Meagher sent Flannery and Haskins, for discussion purposes, drafts of two operating agreements for the new LLCs. These

---

[4] SCR 20:8.4(b) provides: "It is professional misconduct for a lawyer to: commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

operating agreements contemplated that Flannery and his existing companies would own a 60 percent interest in each, and Haskins and his existing company would own a 40 percent interest. Neither operating agreement was ever executed.

¶ 10. Haskins' company wrote a check to Attorney Meagher in partial payment of Attorney Meagher's legal services. Haskins' company made other payments on behalf of the new companies and the development of the software program, totaling over $200,000. Haskins represents that those payments constituted his capital contribution to the new companies. Attorney Meagher asserts that he did not know of these investments at the time they were made.

¶ 11. The process for the new LLCs was never entirely concluded, in that the operating agreements were never signed. Flannery and Haskins continued to negotiate the terms of the joint business venture.

¶ 12. During the spring, summer, and early fall of 1999, according to a subsequent arbitrator's decision, Flannery allegedly "waged a campaign to discredit" Haskins, steal away his existing clients, and to set up a competing business. Flannery also allegedly contacted two of Haskins' employees regarding creation of the new competing business (EBIG).

¶ 13. Attorney Meagher was hired to incorporate EBIG. Although EBIG was intended to compete with Haskins' business, Attorney Meagher did not obtain consent from Haskins for this representation.

¶ 14. As of October 1, 1999, the two employees left Haskins' firm and started doing business as EBIG. They contacted Haskins' clients and encouraged them to switch to their new company. Flannery entered into separate negotiations with Haskins to purchase Haskins' existing company. Haskins retained new coun-

sel. Attorney Meagher undertook representation of Flannery in the negotiations without seeking or obtaining written consent from Haskins or Flannery regarding any conflict of interest.

¶ 15. After intense negotiations in which Attorney Meagher was involved, Haskins and Flannery signed a sale agreement. The sale price that Flannery was to pay Haskins was based on a percentage of the profits of the company over the next ten years.

¶ 16. Haskins' counsel drafted documents, including a letter of intent, to effectuate the sale and presented them for Attorney Meagher's review. Attorney Meagher responded that he and Flannery were "flabbergasted" to discover how much the proposed closing documents deviated from the letter of intent. Attorney Meagher threatened to file a lawsuit seeking specific performance.

¶ 17. One of the provisions in the documents to which Attorney Meagher objected involved the new competing company, which Attorney Meagher had formed for Flannery and for Haskins' former employees. In the midst of negotiations, Haskins wrote to Flannery requesting corporate information regarding the joint business venture in which he had invested some $200,000. Flannery denied that Haskins had any ownership interest in the joint business venture. Attorney Meagher also asserted in subsequent correspondence that Haskins' requests for information about the joint venture, regarding which Attorney Meagher had previously provided legal representation, were "frivolous."

¶ 18. The sale from Haskins to Flannery was never consummated. Flannery sought to enforce the sale agreement through arbitration proceedings. Attor-

ney Meagher did not represent Flannery in those proceedings, but did appear as a witness.

¶ 19. The OLR complaint alleged that by representing Flannery when the representation of Flannery was directly adverse to Haskins, and when the representation adversely affected the relationship with Haskins, and by not obtaining written conflict waivers from Flannery or Haskins, Attorney Meagher represented a client when the representation of that client will be directly adverse to another client without reasonably believing the representation will not adversely affect the relationship with the other client and without each client's written consent, in violation of SCR 20:1.7(a).

¶ 20. The stipulation executed by Attorney Meagher and the OLR also describes the facts giving rise to Attorney Meagher's violation of SCR 20:8.4(b). In April 2002, Attorney Meagher entered a guilty plea to one count of violating the federal Wire Wagering Act, 18 U.S.C. § 1084, by virtue of his ownership interest in Gold Medal Sports (GMS), an offshore gambling operation that took sports bets from United States citizens via wire communications. On July 18, 2002, Attorney Meagher was sentenced to one-month's imprisonment followed by five months of home confinement without electronic monitoring and one year of supervised release. Attorney Meagher also paid a $20,000 fine. Attorney Meagher stipulated that this conviction and the circumstances surrounding it demonstrate that Attorney Meagher engaged in criminal conduct that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects in violation of SCR 20:8.4(b).

¶ 21. In addition to stipulating to the misconduct set forth above, the parties stipulated to discipline in

24

the form of a six-month suspension of Attorney Meagher's license to practice law in Wisconsin, to be imposed retroactive to the date of his temporary suspension, November 12, 2002. The stipulation provides further that it is not the result of a plea bargain and reflects neither a reduction of the charges nor a reduction of the level of discipline originally sought by the OLR. The OLR is not seeking imposition of costs in this matter.

¶ 22. We approve the stipulation and adopt the stipulated facts and conclusions of law. We agree that Attorney Meagher's misconduct warrants the suspension of his license to practice law. We accept the parties' stipulation that a six-month suspension, imposed retroactive to November 12, 2002, the date his license was temporarily suspended, is appropriate discipline for this offense. Therefore,

¶ 23. IT IS ORDERED that the license of Bruce J. Meagher to practice law in Wisconsin is suspended for a period of six months, effective November 12, 2002.

¶ 24. IT IS FURTHER ORDERED that, if he has not already done so, Attorney Bruce J. Meagher must comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 25. PATIENCE D. ROGGENSACK, J., did not participate.