IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Charles J. HAUSMANN, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Charles J. HAUSMANN, Respondent.

Supreme Court

*No. 2004AP156–D. Decided July 19, 2005.*

2005 WI 131

(Also reported in 699 N.W.2d 923.)

¶ 1. PER CURIAM. We review the referee's report and recommendation that Attorney Charles J. Hausmann's license to practice law in this state be suspended for one year for his professional misconduct as alleged in the complaint filed by the Office of Lawyer Regulation (OLR) in this court on January 15, 2004. That complaint alleged that Hausmann, who was admitted to practice law in this state on February 12, 1971, and has had no prior disciplinary history, committed two counts of professional misconduct by violating

SCR 20:1.7(b)[1] and SCR 20:8.4(b).[2] Attorney James Winiarski was appointed as referee in this matter. Shortly before the scheduled public hearing, the parties filed a joint stipulation whereby Hausmann stipulated not only to the facts supporting the violations as alleged by the OLR in its complaint, but also that the facts established his violations of SCR 20:1.7(b) and SCR 20:8.4(b). The only issue in dispute before the referee concerned the appropriate sanction to be recommended for Hausmann's admitted violations of the two rules. The OLR urged the referee to recommend a two-year suspension of Hausmann's license; Hausmann, on the other hand, advocated a five-month suspension as being the appropriate sanction for his admitted misconduct. In his report, the referee recommended that this court impose a one-year suspension plus require Hausmann to pay the costs of this disciplinary proceeding now totaling $14,431.78.

¶ 2.   Neither Hausmann nor the OLR have appealed and neither challenge the referee's recommendation regarding the sanction to be imposed; accord-

---

[1] SCR 20:1.7(b) provides in pertinent part:   Conflict of interest: general rule.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected, and

(2) the client consents in writing after consultation. . . .

[2] SCR 20:8.4(b) provides: Misconduct. "It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

ingly, this court's review proceeds pursuant to SCR 22.17(2).[3]

¶ 3. After our review of the record in this matter, we adopt the referee's findings of fact and conclusions of law as stipulated to by the parties. We also accept the referee's recommendation and agree that a one-year suspension of Hausmann's license to practice law in this state is an appropriate sanction to be imposed for his admitted misconduct. We also determine that Hausmann should pay all the costs of these disciplinary proceedings in the amount specified, $14,431.78.

¶ 4. Charles Hausmann practices law in Milwaukee primarily representing personal injury plaintiffs. His firm, Hausmann-McNally, S.C., is one of the largest personal injury firms in the area with most of its clients coming from Milwaukee. Attorney Hausmann is no longer as active in the actual representation of clients as he had been in the past; now as the self-described firm's "rainmaker," he spends a substantial amount of his time marketing the law firm to prospective clients.

¶ 5. The firm's personal injury clients are required to sign a retainer agreement which usually provides that the firm will be paid one-third of whatever total sum is collected on behalf of the client. In the retainer agreement, the client authorizes the firm to pay medical and other bills directly to the medical providers and hospitals; the money to pay those bills comes directly from the client's portion of any settle-

---

[3] SCR 22.17(2) provides in pertinent part: Review; appeal.

(2) If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

ment payments received. After a retainer agreement had been signed, the firm frequently would refer clients to various medical providers in the Milwaukee area. Between October 1999 and June 2001, the firm referred approximately 200 clients to a chiropractor, Scott Rise, and his clinic, Milwaukee Spinal Injury Center. Sometime before these referrals started, Hausmann and Rise entered into an oral agreement by which Rise agreed to provide chiropractic care and treatment to the law firm's clients who did not have insurance; Rise also agreed that he would not insist upon immediate payment, would wait for payment until conclusion of the personal injury case, and would waive payment in the event the case yielded no recovery. In addition, Rise agreed that he would be willing to reduce his charges if necessary to settle a case to the client's satisfaction. It was also agreed that Rise would locate a chiropractic office in Milwaukee's central city, on a bus line, would treat all referrals with "dignity and respect," and would render quality care appropriate to the severity of the injury sustained.

¶ 6. Furthermore, in return for the referrals from Hausmann, Rise agreed to pay 20% of his fees for chiropractic services to third-party recipients as directed by Hausmann. Between October 1999 and June 2001, Hausmann named several recipients for these payments from Rise including (1) individuals who had provided miscellaneous personal services to Hausmann or his relatives; (2) a marketing firm providing services at Hausmann's direction; (3) business entities (or their agents) in which Hausmann held some interest; and (4) charities that Hausmann supported.[4]

---

[4] Pursuant to this arrangement, Rise paid $31,692 to a marketing firm with whom Hausmann had contracted to mar-

¶ 7. The financial arrangement between Hausmann and Rise was not disclosed by Hausmann to any of the firm's clients who were treated at Rise's chiropractic office. Likewise, Hausmann had not disclosed the arrangement with Rise to his partners or firm, nor did he inform his clients who received chiropractic treatment from Rise's office, about any potential conflicts that could be generated by the financial arrangement Hausmann had with Rise. And, Hausmann did not obtain his clients' written consent to his representation despite this potential conflict of interest. *See* SCR 20:1.8.[5]

¶ 8. Hausmann stipulated—and the referee found —that Hausmann handled the payment of his clients' medical bills at Rise's chiropractic center differently than the way Hausmann handled payments to other

ket services of lawyers and chiropractors as part of a planned "Accident Care Network." Rise also paid at least $2000 to a charity that Hausmann had named which was actually a payment for landscaping work performed at Hausmann's residence. In addition, Rise paid $14,900 to a full-time handyman who had provided services at Hausmann's direction to Hausmann's firm, Rise's office, Hausmann personally, a business jointly owned by Hausmann and his law partner in their individual capacities, and Hausmann's sister. Furthermore, as directed by Hausmann, Rise wrote a check for $850 to a company that refinished floors of an employee involved in Hausmann's marketing project. According to a subsequent FBI investigation and report, at least $2000 of the checks Rise wrote at Hausmann's direction, benefited Hausmann directly.

[5] SCR 20:1.8 provides in pertinent part: Conflict of interest: prohibited transactions. "(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: . . . (3) the client consents in writing thereto."

medical providers on behalf of clients. With respect to the other medical providers he had referred clients to for treatment, after Hausmann received a settlement on behalf of a client, Hausmann would usually send individual checks to each party listed on the settlement statement, including the medical providers who were owed for their services. In contrast, in the settlements involving clients who Hausmann had referred to and had been treated by Rise, Hausmann held those payments and settlement checks in a separate folder. Once a month, Hausmann would then meet with Rise personally and give Rise the checks. At Hausmann's direction, Rise would then draft checks payable to third persons as specified by Hausmann. These checks that Rise drafted at Hausmann's direction totaled approximately 20% of Rise's billings for Hausmann's clients. Between October 1999 and June 2001, Rise received approximately $350,000 in medical billings generated from Hausmann's clients. During that time, Rise, at Hausmann's direction, wrote 57 checks totaling $77,062.87 payable to third parties Hausmann had identified.

¶ 9. Based on this arrangement, in January 2002, a federal grand jury indicted Hausmann and Rise on charges of conspiracy to commit mail and wire fraud—depriving clients of the "intangible right to honest services"—in violation of Title 18, United States Code, §§ 371, 1341, 1343 and 1346.[6]

---

[6] Where "two or more persons conspire . . . to commit any offense" under Title 18 of the United States Code "one or more of such persons [who commit] any act to effect the object of the conspiracy" may be held criminally liable therefore under 18 U.S.C. § 371. It is a violation of 18 U.S.C. §§ 1341, 1543, and 1346 to use the United States Postal Service, a private interstate courier, or an interstate wire communications service in

¶ 10. Count 1 of the indictment alleged that Hausmann owed a fiduciary duty to the clients of his law firm; that the clients were owed the "intangible right to honest services"; and that Hausmann had engaged in a "kickback scheme" which was concealed from his clients in violation of Hausmann's fiduciary duty.

¶ 11. The second count of the indictment charged Hausmann with causing securities (i.e. the checks written by Rise at Hausmann's direction) to be transferred in interstate commerce in connection with fraud, in violation of Title 18, United States Code, §§ 2314 and 2.

¶ 12. On June 3, 2002, Hausmann entered a conditional plea of guilty to Count 1, the conspiracy charge; pursuant to the agreement, the second count of the indictment was dismissed. Hausmann also, in the plea bargain, preserved his ability to appeal the denial of his pretrial motion to dismiss. At the plea hearing in the federal district court, Hausmann admitted that he had a financial arrangement with Rise that called for Rise to write checks at Hausmann's direction; that the amount of the checks equaled approximately 20% of the medical bills collected by Rise's chiropractic center; that Hausmann used the U.S. mails and interstate wire communications in furtherance of his arrangement with Rise; and that the financial arrangement was not disclosed to Hausmann's clients.

¶ 13. After accepting Hausmann's guilty plea, the federal district court sentenced him to two months imprisonment, 16 months of supervised release and 40 hours of community service. Hausmann was also fined $10,000 and he and Rise were ordered to pay restitution

order to implement a "scheme or artifice to defraud [by depriving] another of the intangible right of honest services." 18 U.S.C. § 1346 (2002).

to the clients in the amount of $77,062.87, jointly and severally. Subsequently, Hausmann personally paid the restitution in full.[7]

¶ 14.  On their consolidated appeals, the federal court of appeals rejected the argument that the clients Hausmann had referred to Rise had not been "harmed" by the arrangement between Hausmann and Rise. The Seventh Circuit wrote:

> Appellants contend that Rise's third-party payments were not kickbacks, but rather constituted the legitimate spending of income derived from use of fees to which Rise was legally entitled. They maintain that Hausmann's clients had no right to the settlement funds paid to Rise nor, consequently, to the allocation of twenty percent of those funds to expenditures designated by Hausmann. In this sense, reason Appellants, no harm resulted to Hausmann's clients, who were deprived of nothing to which they were entitled. This reasoning ignores the reality that Hausmann deprived his clients of their right to know the truth about his compensation:  In addition to one third of any settlement proceeds he negotiated on their behalf, every dollar of Rise's effective twenty percent fee discount went to Hausmann's benefit. Insofar as Hausmann misrepresented this compensation, that discount should have inured to the benefit of his clients. It is of no consequence, despite Appellants' arguments to the contrary, that Rise's fees (absent his discount) were competitive, or that clients received the same net benefit as they would have absent the kickback scheme. The scheme itself converted Hausmann's representa-

---

[7] Rise was convicted in federal court following a jury trial on the conspiracy charge. Both he and Hausmann appealed and those appeals were consolidated. On September 22, 2003, the United States Court of Appeals for the Seventh Circuit affirmed both convictions. *United States v. Hausmann,* 345 F.3d 952 (7th Cir. 2003).

tions to his clients into misrepresentations, and Hausmann illegally profited at the expense of his clients, who were entitled to his honest services as well as their contractually bargained-for portion of Rise's discount.

*United States v. Hausmann,* 345 F.3d 952, 957 (7th Cir. 2003).

¶ 15. In his post-hearing brief submitted to the referee in this disciplinary proceeding, Hausmann again suggested that none of his clients had been harmed in any way by the arrangement Hausmann had with the chiropractor, and that any disclosure to the clients of a potential conflict of interest would have been a "mere formality." In its post-hearing brief submitted to the referee, the OLR disputed Hausmann's altruistic view of the arrangement he had with Rise. According to OLR's argument in that post-hearing brief, Hausmann was aware of the potential conflict of interest from the beginning of his arrangement with Rise; moreover, the OLR pointed out that this agreement was oral, that Hausmann did not disclose his 20% arrangement to his law partners or associates, and that the monthly exchange of checks between Hausmann and Rise occurred in "relative secrecy."

¶ 16. As noted, Hausmann stipulated before the referee that the facts as outlined in the OLR's complaint were sufficient to find violations of both SCR 20:1.7(b) (conflict of interest) and SCR 20:8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer). Not only did Hausmann stipulate to the facts, but he also stipulated to the conclusions of law that he violated both of those supreme court rules. Therefore, according to Referee Winiarski, his discussion and

report would focus on the appropriate discipline to be recommended for this admitted misconduct by Hausmann.

¶ 17. The referee agreed with the OLR's analysis that the arrangement between Hausmann and Rise created an obvious conflict of interest for Hausmann in relation to the clients Hausmann referred to Rise for chiropractic services. Moreover, the referee criticized Hausmann for his "disturbing" positions, which failed to recognize the conflict of interest and the harm to his clients. According to the referee, although Hausmann had stipulated to the violation of the two supreme court rules, he failed to appreciate the substantial conflict of interest that arose from his relationship with Rise and did not appreciate the effect his actions had on his law firm and on the legal profession. Referee Winiarski wrote:

> Hausmann had much to gain in his arrangement with Dr. Rise as it related to the development of a direct marketing brochure and program for chiropractors. Hausmann had the potential for considerable profits if the chiropractic direct marketing program had been successful. He thus benefited by the payments he directed Dr. Rise to make to various vendors and organizations involved in developing the chiropractic direct marketing program. Hausmann also benefited from the exposure he and his firm received when donations were made to various inner city charities to which he directed Dr. Rise to make payments from the chiropractic receipts. Hausmann did not refer clients to Dr. Rise "solely in the client's best interest" as he argued, but also because such referrals were beneficial to the personal injury practice conducted by the Hausmann firm.

¶ 18. In its post-hearing brief, the OLR argued that the appropriate sanction for Hausmann's miscon-

duct should be a two-year suspension of his license to practice law in this state. The OLR maintained that that sanction would be consistent with the discipline imposed in numerous prior cases such as *In re Disciplinary Proceedings Against Stein,* 170 Wis. 2d 112, 486 N.W.2d 526 (1992); *In re Disciplinary Proceedings Against Shlimovitz,* 2002 WI 103, 255 Wis. 2d 353, 647 N.W.2d 241; *In re Disciplinary Proceedings Against Webster,* 217 Wis. 2d 371, 577 N.W.2d 21 (1998); *In re Disciplinary Proceedings Against Hunsick,* 2001 WI 58, 243 Wis. 2d 631, 628 N.W.2d 341; and *In re Disciplinary Proceedings Against Wolf,* 2001 WI 4, 241 Wis. 2d 76, 621 N.W.2d 624. According to the OLR, Hausmann's misconduct in this case was comparable to the misconduct involved in those prior attorney disciplinary matters, and in each of those prior cases, the attorney involved had received a two-year suspension after a felony conviction.

¶ 19. The OLR also argued that in those cases where the attorney received a suspension of less than two years, *see, e.g., In re Disciplinary Proceedings Against Frank,* 206 Wis. 2d 233, 556 N.W.2d 717 (1996); *In re Disciplinary Proceedings Against Runyon,* 121 Wis. 2d 37, 357 N.W.2d 545 (1984); *In re Disciplinary Proceedings Against Olson,* 216 Wis. 2d 483, 574 N.W.2d 245 (1998); and *In re Disciplinary Proceedings Against Meagher,* 2003 WI 132, 266 Wis. 2d 18, 669 N.W.2d 733, the misconduct involved was far less serious than Hausmann's misconduct in this case. In addition, according to the OLR, none of those prior cases where the attorney received a shorter period of suspension involved a federal felony conviction for mail and wire fraud for engaging in a kickback scheme affecting over 200 clients.

¶ 20. Furthermore, the OLR identified several aggravating factors regarding Hausmann's misconduct which, the OLR maintained, outweighed such mitigating factors as Hausmann's lack of a prior disciplinary history and his longstanding commendable involvement in community affairs. According to the OLR those aggravating factors included Hausmann's dishonest or selfish motive, his pattern of misconduct (depriving over 200 clients of honest services and over $77,000 in personal injury settlement funds), his stipulated two count violation of supreme court rules, his refusal to acknowledge the wrongful nature of his misconduct, and his substantial experience in the practice of law. The OLR, therefore, urged the referee to recommend a two-year suspension of Hausmann's license to practice law.

¶ 21. Hausmann, on the other hand, in his post-hearing brief to the referee, urged the referee to recommend only a five-month suspension. Hausmann maintained that his misconduct was far less serious and was distinguishable from many of the cases cited by the OLR. He also emphasized that although his failure to advise his clients of the relationship he had with Rise deprived the clients of the right to question that relationship or make other arrangements for either their health care or legal representation, the arrangement did not deprive any of his clients of money they would have otherwise received. Hausmann also pointed out that he had personally paid the entire $77,000 in restitution to all the clients affected by what he conceded was an "ill-conceived plan." Again, Hausmann stressed that despite appearances, this was not a "kickback scheme"; rather, according to Hausmann, it was simply a method for Rise to pay for legitimate marketing services in his effort to expand his chiropractic

clinic. Hausmann, in the post-hearing brief recognized that he should have disclosed his relationship with Rise even though that relationship had no tangible adverse effect on Hausmann's clients. He also conceded that that constituted a "deprivation of honest services"; according to Hausmann, that is why he pled guilty to the federal charge brought against him.

¶ 22. As noted, Referee Winiarski has recommended that this court should suspend Hausmann's license to practice law in this state for a period of one year based on Hausmann's admitted misconduct. In his report, the referee reasoned that although Hausmann has performed charitable work "far above anything I have ever seen before," and that until this case, Hausmann's character has been outstanding, the referee nevertheless emphasized that Hausmann displayed poor judgment and placed himself in the position of a conflict of interest. The referee discussed the various factors to be taken into account when considering the appropriate discipline to be imposed for professional misconduct as set out in *In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 40, 248 Wis. 2d 662, 636 N.W.2d 718. The referee viewed Hausmann's conduct to be far more serious than the conduct involved in those prior cases where a shorter suspension was imposed because here, Hausmann's misconduct was not a single act, but rather his misconduct affected 200 clients. The referee concluded that the appropriate sanction to be recommended for Hausmann's misconduct was a one-year suspension of his license to practice law in this state.

¶ 23. We have recognized in prior disciplinary cases involving an attorney's violation of SCR 20:8.4(b) based on an attorney's criminal conviction, that each

621

case must be assessed on the basis of its own facts. There is no "standard" two-year suspension of an attorney's license to practice law following the attorney's criminal conviction. Rather, this court imposes the sanction it deems appropriate under the circumstances of each case regardless of the referee's recommendation. *In re Disciplinary Proceedings Against Widule,* 2003 WI 34, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 24.   In this case, we agree with the referee's recommendation that Hausmann's license to practice law should be suspended for one year. That suspension, we believe, is commensurate with the serious nature of Hausmann's misconduct, yet at the same time acknowledges mitigating factors present in this case including Hausmann's lack of a prior disciplinary history and his long record for community service and involvement. The lawyer regulation system in this state has been established to, among other things, "protect the public from misconduct by persons practicing law in Wisconsin." *See* preamble, SCR Chapter 21. We find Hausmann's professional misconduct to constitute serious infractions of the rules governing a lawyer's professional behavior and responsibility. We also recognize that requiring Hausmann to pay the costs of these proceedings totaling $14,431.78 on top of his $10,000 fine and the $77,000 restitution he has personally paid, means that Hausmann will ultimately have paid more than $100,000 for participating in what he aptly describes as an "ill-conceived plan."

¶ 25.   IT IS ORDERED that the license of Attorney Charles J. Hausmann to practice law in Wisconsin is suspended for a period of one year, effective August 30, 2005.

¶ 26. IT IS FURTHER ORDERED that Attorney Charles J. Hausmann shall comply, if he has not already done so, with the requirement of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 27. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Charles J. Hausmann pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified, and absent a showing to this court of an inability to pay the costs within that time, the license of Attorney Charles J. Hausmann to practice law in Wisconsin shall remain suspended until further order of the court.