732 N.W.2d 419 (2007)
2007 WI 51
In re the Reinstatement of Brian K. POLK, Petitioner,
v.
OFFICE OF LAWYER REGULATION, Respondent.
No. 2006AP3096-D.
Supreme Court of Wisconsin.
Decided May 11, 2007.
¶ 1 PER CURIAM.
In this matter we are asked to review the petition by Attorney Brian K. Polk for the reinstatement of his license to practice law in this state following an administrative suspension of three or more consecutive years due to his failure to comply with the mandatory reporting requirements for continuing legal education (CLE). We determine at the conclusion of the process described below, that Attorney Polk's petition for reinstatement should be denied. We also conclude that Attorney Polk should be required to pay the costs of this reinstatement proceeding, which totaled $6232.45, as of October 25, 2006.
¶ 2 Attorney Polk was admitted to practice law in Wisconsin in June 1994. His license has been suspended since June 5, 2001, because of the CLE noncompliance.
¶ 3 On February 26, 2006, Attorney Polk filed a petition for reinstatement of his license to practice law in this state. Because his suspension had been for a period of three or more consecutive years, Attorney Polk's petition for reinstatement was governed by SCR 22.28(1)(d)[1] and SCR 31.11(1m).[2]
*420 ¶ 4 The Board of Bar Examiners (BBE) filed a memorandum noting that Attorney Polk had satisfied the CLE attendance requirements and recommending his reinstatement. The Office of Lawyer Regulation (OLR), however, filed a memorandum recommending against Attorney Polk's reinstatement because of concerns it had regarding Attorney Polk's multiple instances of driving after suspension/revocation of his driving privileges, a 1999 citation for loitering-illegal drug activity and discrepancies between Attorney Polk's version of that incident and the police report, and a substantial number of unpaid civil judgments against Attorney Polk. Attorney Polk filed a memorandum replying to the issues raised by the OLR.
¶ 5 Because of the presence of disputed issues of fact, on June 23, 2006, the court issued an order appointing Reserve Judge Dennis J. Flynn as referee and directing Judge Flynn to determine (1) the number and type of citations/convictions that Attorney Polk had received that involved the operation of a motor vehicle, (2) the facts surrounding the incident for which Attorney Polk received a citation for loitering-illegal drug activity and whether Attorney Polk had misrepresented those facts to the OLR during the reinstatement process, and (3) the facts concerning the nature and status of any outstanding civil judgments against Attorney Polk.
¶ 6 On October 6, 2006, the referee filed a report noting Attorney Polk's approximately 20 traffic infractions for the period of 1996 through 2006, with a sizable number of citations for operating after suspension/revocation of his driving privileges. The referee also concluded that Attorney Polk had testified untruthfully at the September 6, 2006 hearing before the referee concerning the 1999 incident for which Attorney Polk had received a citation for loitering-illegal drug activity. Finally, the referee found that there are at least eight unpaid civil judgments against Attorney Polk, which were entered a number of years ago and for which he has not made payments or entered into agreements to make even partial payments, indicating that he is intentionally attempting not to pay his lawful debts.
¶ 7 On the basis of the referee's findings, from which Attorney Polk has not appealed, we conclude that Attorney Polk's petition for reinstatement must be denied at this time.
¶ 8 The dissent characterizes this result as a de facto disciplinary suspension of indefinite duration. It is not.
¶ 9 The dissent's criticism stems from its apparent assumption that there is no legal basis for denying the readmission of an attorney who has been administratively suspended for CLE noncompliance if the attorney has obtained the necessary make-up CLE credits. The Supreme Court Rules regarding readmission after more than three consecutive years of administrative suspension for CLE noncompliance, however, provide a role for the OLR and require a determination of the petitioning attorney's eligibility for readmission to the practice of law in this state.[3]
¶ 10 SCR 22.28(1)(d) directs an attorney seeking readmission in such a situation to the process set forth in SCR 31.11(1m). *421 Under SCR 31.11(1m), in addition to a determination of CLE compliance by the BBE, the director of the OLR is required to "investigate the eligibility of the petitioner for reinstatement" and to file a response in support of or opposition to the petition for reinstatement. This investigation of eligibility for reinstatement after three or more consecutive years of administrative suspension is akin to the review conducted by the BBE during an initial application for a license to practice law in this state. See SCR 40.06(1) and (3).[4] To be admitted to practice in the first instance, an applicant must demonstrate that he/she has good moral character and the fitness to practice law. Such a showing, along with proof of legal competence, makes an applicant eligible to be admitted to the practice of law. Likewise, an attorney who has been administratively suspended and out of the practice of law in this state for three or more consecutive years must also demonstrate the attorney's "eligibility"namely, that the attorney has good moral character and the fitness to practice law in this state.
¶ 11 If the phrase "eligibility of the petitioner for reinstatement" in SCR 31.11(1m)(c) is not interpreted to require the OLR to investigate and comment on the petitioner's character and fitness to practice, why include the phrase? Without the phrase, all petitioners for reinstatement after an administrative suspension for CLE noncompliance could obtain reinstatement simply by demonstrating present compliance with the CLE requirements. The rule, however, mandates that the OLR "investigate" the petitioner's "eligibility . . . for reinstatement" when three or more years have passed. It is the length of the time out of the practice of law in this state that is the basis for differentiating between attorneys seeking readmission after an administrative suspension and for imposing such an "eligibility" requirement on attorneys with lengthier suspensions. After having been away from the practice of law in this state for such a lengthy period of time, an attorney may reasonably be expected to demonstrate anew that he/she possesses the character necessary to ensure that clients and the public can rely on him/her for integrity and competent legal service.
¶ 12 Contrary to the dissent's contention, the denial of Attorney Polk's current petition for reinstatement is not a disciplinary suspension. No disciplinary action will appear on Attorney Polk's record.
¶ 13 Our decision also is not a ruling that Attorney Polk may never be readmitted to the practice of law in Wisconsin. It is simply a determination, based on the referee's factual findings as briefly summarized above, that Attorney Polk has not demonstrated at this point that he has the good moral character and fitness to practice law to make him eligible for reinstatement. *422 He may file another reinstatement petition when he can make that showing. While he cannot change his past conduct, he can ensure that his present and future conduct will show good moral character and the fitness to practice law. In this regard, one of the referee's most troubling findings was that Attorney Polk was not truthful during the evidentiary hearing on his reinstatement petition. This finding does not relate to conduct that occurred prior to the administrative suspension. It relates to Attorney Polk's current fitness to practice law, which is the issue that this court decides today and would decide again in response to the facts presented in connection with another petition for reinstatement.
¶ 14 IT IS ORDERED that the petition by Brian K. Polk for the reinstatement of his license to practice law in this state is denied.
¶ 15 IT IS FURTHER ORDERED that within 60 days of the date of this order, Attorney Brian K. Polk pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Brian K. Polk to practice law in Wisconsin shall remain suspended until further order of the court.
¶ 16 ANN WALSH BRADLEY, J. (dissenting).
It is important to note that Brian Polk was not suspended as a result of any ethical lapse. Rather, he was administratively suspended for failure to comply with the mandatory reporting requirements for CLE (continuing legal education).
¶ 17 The problem with the majority opinion is that in denying his petition for reinstatement it in essence punishes Polk for conduct that occurred well before his administrative suspension on June 5, 2001, and which never was the subject of an attorney discipline case. It thereby transforms his administrative suspension into a de facto indefinite disciplinary suspension, offering him no guidance and little chance of ever being reinstated.
¶ 18 The majority bases its denial of his petition for reinstatement on three areas of transgression. I will address each in turn.
¶ 19 Traffic violations. The referee states that Polk's past traffic transgressions should not act now to prevent him from returning to the active practice of law. I agree. His driver's license was reinstated in April 2005, and since then he has received only one speeding ticket.
¶ 20 Ordinance violation. As a basis of its decision, the majority emphasizes that Polk received a ticket for "loitering-illegal drug activity." This was not a criminal conviction, but rather was an ordinance violation. The conduct occurred on March 5, 1999, over two years prior to his 2001 administrative suspension. Although an ordinance violation of this nature can be serious, without more, it should not be the basis of an indefinite suspension. Here, other than this eight-year-old ordinance violation, there is no implication of any drug use or any drug-related violation. Admittedly, Polk's version of the incident differed from that offered by the arresting officer. However, Polk indicated that he was not going to contest the charge because he considered the matter only a minor incident "like getting a parking ticket."
¶ 21 Unpaid civil judgments. The court also relies on unpaid civil judgments as a basis for denying the petition for reinstatement. Again, six of the nine civil judgments relied upon occurred before he was administratively suspended in 2001.
*423 ¶ 22 How can Polk make amends for these past matters? What can he do to be reinstated? The majority gives no hint.
¶ 23 He has changed what he can change. The Board of Bar Examiners has filed a memorandum noting that Polk has satisfied the CLE attendance requirement and recommends his reinstatement. But the majority does not now deem that sufficient for reinstatement.
¶ 24 Can Polk change his past driving record? No. Can he change the 1999 ordinance violation? No. Can he pay the past civil judgments? Perhaps. Polk testified that he has had low-paying jobs since his suspension and had to use the money he earned to support his family (his wife and two children). I suppose that he could be, and should be, put on a payment plan. I do not believe that non-payment of civil judgments, however, should preclude his reinstatement.
¶ 25 Had he complied with the mandatory reporting requirement for continuing legal education, he would still be practicing law. Instead, the majority transforms his administrative suspension into a de facto discipline action and continues his suspension indefinitely.
¶ 26 In disciplining Polk under the guise of an administrative suspension, the majority is able to circumvent the established disciplinary sanctions. If this matter had originated as a discipline action, then the majority could not indefinitely suspend Polk. Only suspensions of specified duration would be available.[1]
¶ 27 It seems unfair, here, to punish Polk for these transgressions that occurred before his administrative suspension, and in essence to discipline him for conduct that was never the subject of an attorney discipline case.
¶ 28 It seems unwise, here, for the majority to transform an administrative suspension into a de facto indefinite disciplinary action. What the majority is really doing is punishing the conduct of those who come before the court via an administrative suspension differently than it could punish for that same conduct if it came before the court via a disciplinary action.
¶ 29 Accordingly, for the above reasons I cannot join the opinion of the court and respectfully dissent.
¶ 30 I am authorized to state that JUSTICE N. PATRICK CROOKS and JUSTICE LOUIS B. BUTLER, JR. join this dissent.
NOTES
[1] SCR 22.28(1)(d) provides that "[a]n attorney whose suspension for failure to comply with the continuing legal education requirements has been for a period of 3 or more consecutive years may seek reinstatement under SCR 31.11(1m)."
[2] SCR 31.11(1m) provides: Reinstatement.

(1m) Suspension of 3 or more consecutive years.
(a) A lawyer whose suspension has been for a period of 3 or more consecutive years may file a petition for reinstatement with the supreme court and serve a copy on the board and the office of lawyer regulation. Separate payments in the amount of $200 each shall be made to the board of bar examiners and the office of lawyer regulation shall accompany the petition.
(b) Within 90 days after service of the petition, the board shall make a determination regarding compliance and file its finding with the supreme court.
(c) Within 90 days after service of the petition, the director of the office of lawyer regulation shall investigate the eligibility of the petitioner for reinstatement and file a response with the supreme court in support of or opposition to the petition.
[3] By contrast, when an attorney who was administratively suspended for CLE noncompliance seeks reinstatement after a period of less than three years, only the BBE becomes involved and its review is limited to a determination of whether the attorney is now in compliance with CLE requirements. SCR 22.28(1)(b) and SCR 31.11(1).
[4] SCR 40.06(1) and (3) provide:

(1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.
(3) An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirements set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.
[1] See, e.g., In re Disciplinary Proceedings Against Felli, 2006 WI 73, 291 Wis.2d 529, 718 N.W.2d 70 (three-year suspension); In re Disciplinary Proceedings Against Fitzgerald, 2006 WI 58, 290 Wis.2d 713, 714 N.W.2d 925 (90-day suspension); In re Disciplinary Proceedings against Hausmann, 2005 WI 131, 285 Wis.2d 608, 699 N.W.2d 923 (one-year suspension); In re Disciplinary Proceedings Against Kelsay, 2003 WI 141, 267 Wis.2d 17, 671 N.W.2d 8 (six-month suspension); In re Disciplinary Proceedings Against Ray, 2002 WI 116, 256 Wis.2d 19, 651 N.W.2d 727 (60-day suspension).