STATE, Plaintiff, v. GULBANKIAN and another, Defendants.

*No. State 39. Argued March 30, 1972.—Decided May 4, 1972.*
(Also reported in 196 N. W. 2d 733.)

606

For the plaintiff there was a brief by *Rudolph P. Regez* of Monroe, attorney, and *Warren H. Resh* of Madison of counsel, and oral argument by *Mr. Regez.*

For the defendants there was a brief by *Flynn, Flynn & Flynn* and *Robert W. Weber,* all of Racine, and oral argument by *Gerald T. Flynn.*

PER CURIAM. Gulbank K. (George) Gulbankian was admitted to practice law in Wisconsin in 1926 and practiced alone in Racine until his sister Miss Vartak Gulbankian was admitted to practice law in 1935. They shared offices until 1955 when they commenced to practice law as partners and have so practiced until the present time. The complaint alleges the Gulbankians have solicited the probate of estates by inserting in the wills which they draft a provision that they should be the attorney for the executor and in some wills the executor or executrix. The answer denies any solicitation and alleges their designation as attorneys or executor in the wills was at the request of the respective clients.

From January 1, 1955, through January 23, 1971, the Gulbankians filed for probate in the county court of Racine county 147 wills, of which 135 were drafted by them. Of these 135 wills, 71 directed the employment of one or the other of the Gulbankians for the purpose of probating the estate. Twenty-six of the wills directed the employment of Gulbank K. Gulbankian and four directed the appointment of Vartak Gulbankian; in 41 wills Akabe Gulbankian, a sister of the attorneys, was appointed either executrix or coexecutrix; and in three wills Vartak Gulbankian was named executrix. Prior to 1957 about 50 percent of the wills drawn contained a provision for the employment of either Gulbank or Vartak Gulbankian, but since that time in about 94 percent of the wills the executor was instructed to retain either G. K. Gulbankian or Vartak Gulbankian as attorney.

Only one will drafted after 1957 failed to name a member of the Gulbankian family to some fiduciary capacity. On the basis of this record it is argued that because such a large percentage of wills drawn by the Gulbankians contain a direction to the executor to retain them as attorneys, an inference must of necessity be drawn that the Gulbankians at the time the wills were drafted suggested to or solicited the testators to provide for their employment to probate the estates. Such conduct it is argued amounts to unprofessional conduct.

It is, of course, unprofessional to solicit professional employment, not only by advertisement, touters or runners, but also by personal communication or interviews. Canon 27, Canons of Ethics of the American Bar Association. The new Code of Professional Responsibility, Disciplinary Rules DR 2–103, provides in paragraph (A) that a lawyer shall not recommend employment of himself or his partner or associate to a nonlawyer who has not sought his advice regarding the employment of a lawyer. The object of these canons is to prevent lawyers from engaging in competitive advertising and from attempting to explain to the public why they could serve better or accomplish more than other lawyers could. Such advertising is the lifeline of business, but it has traditionally been prohibited in the professions. While solicitation of cases may not involve the high degree of moral turpitude which fraud does, nevertheless solicitation is considered inimical to the good reputation of the legal profession and likely to bring the profession into disrepute.

The narrow question in this case is whether this court should draw an inference of solicitation on the record. This matter was referred to and heard by the Honorable JOHN K. CALLAHAN, a reserve judge, as referee. We have great respect for his judgment. He does not find actual solicitation but he does think that lay people might infer solicitation if they were not cognizant of the facts.

The Gulbankians claim they did not suggest the inclusion of such a clause but rather their clients spontaneously directed that they put in the will the requirement that they be retained to take care of the probate or that they act as executor. They point out many of their clients are of Armenian descent and have difficulty conversing in English; and because of the common ethnic background, there is a closer relationship between the Gulbankians and their clients than ordinarily exists between other attorneys and clients.

The Gulbankian family were Armenian immigrants to America, coming here to escape the massacre by the Turks in the early part of the 20th Century. Their family presently consists of two attorneys (the defendants), a sister Akabe who is engaged as a real estate saleswoman and does income tax work, and a sister Rose who for the most part is the housekeeper for the family. There was also a brother Harry who was the first of the family to come to this country but who is now deceased. The Gulbankians arrived in this country as penniless immigrants and settled in Racine county, where there is now a large population of Armenians, Slovaks, Greeks, and southern Europeans. Apparently the Gulbankians have helped the Armenian community, gained the confidence of a large segment of the foreign-speaking people in the area, and for many years were the only Armenian attorneys in Racine. The defense produced several clients who have had their wills prepared by the Gulbankians and who testified they wanted the Gulbankians to probate their estates as well.

We are asked to consider that the clients of the Gulbankians' firm are different than the average law client in that they place unusually great trust in their attorneys and look to them for counsel and advice in many areas, some of which do not involve legal matters. This confidence is based not only on the fact the Gulbankians are professional people but also on language and ethnic affinity. The record shows the Gulbankians have a sub-

stantial probate practice in the county of Racine and are well respected and regarded by the community. The referee was impressed with these features of the case.

As a part of their defense, the Gulbankians claim there is a custom in Racine county for attorneys to name themselves attorneys for the estate in some form of language. The defendants' exhibits show that 23 to 71 percent of the wills drafted by other law firms in the Racine area contain a provision for employment to probate the estate.[1] There is oral testimony tending to prove a practice in Racine county of attorneys putting in a clause directing he be retained to probate the estate in five to 50 percent of the wills. There was other testimony that one attorney seldom put the clause in a will and never without a voluntary direction by the client. Of course, the extensiveness of a practice does not mean the practice is legitimate if in fact the practice amounts to solicitation of business. It is most difficult to determine from statistics whether the recurrence of such clauses is the result of voluntary and unsuggested directions from the testator or whether such recurrence reflects the effectiveness of subtle suggestions.

It is clear an attorney cannot solicit either directly or by any indirect means a request or direction of a testator that he or a member of his firm be named executor or be employed as an attorney to probate the estate. In those fairly rare cases where a client, because of the unusual familiarity of the attorney with the testator's business or family problems or because of a relationship which transcends the ordinary client-attorney relationship, asks his attorney to act as executor or to provide for his employment to probate the estate, there is no solicitation. A gray area, however, exists when an attorney explains the duties of an executor and the question

[1] B—22.6%; L—28.9%; F—55.1%; M—50%; P—70.8%; B & L—30.7%; former judge 42%.

is reached concerning probate. In preparing a will the attorney must know the identity of the executor. In many cases the testator is unfamiliar with the duties of an executor. It is the lawyer's right and duty to advise the testator what the duties of the executor are, to explain that the executor may hire an attorney to help him probate the estate, and that in the case of a corporate executor that sec. 856.31 Stats. (effective April 1, 1971), may apply. When the section is applicable, the person receiving the largest interest may name the attorney unless good cause is shown otherwise. Whether the naming of the attorney by the testator constitutes such good cause has raised problems but so have directions to a noncorporate executor to hire a designated attorney. *See Estate of Ogg* (1952), 262 Wis. 181, 54 N. W. 2d 175; *Estate of Braasch* (1957), 274 Wis. 569, 80 N. W. 2d 759; *Estate of Sieben* (1964), 24 Wis. 2d 166, 128 N. W. 2d 443; *Estate of Thayer* (1968), 41 Wis. 2d 55, 163 N. W. 2d 142; 31 Marquette L. Rev. (1947), 231.

This problem must be discussed by the attorney and his client objectively and uninfluenced by any desire of the attorney to eventually probate the estate. An attorney should not use a will form which provides for a designation of an attorney for the probate of the estate or executor for submission to the testator on the theory it is properly a part of a standard form of a will; no such form of suggestion may be used. An attorney, merely because he drafts a will, has no preferential claim to probate it. *Estate of Ainsworth* (1971), 52 Wis. 2d 152, 187 N. W. 2d 828. Nor do we approve of attorneys' "safekeeping" wills. In the old days this may have been explained on the ground many people did not have a safe place to keep their valuable papers, but there is little justification today because most people do have safe-keeping boxes, and if not, sec. 853.09, Stats., provides for the deposit of a will with the register in probate for

safekeeping during the lifetime of the testator. The correct practice is that the original will should be delivered to the testator, and should only be kept by the attorney upon specific unsolicited request of the client.

We emphasize that while an attorney is discussing the identity and the duties of an executor, he must especially be careful that his conversation does not intimate or suggest or solicit, directly or indirectly, his employment as the possible attorney to assist the executor in the probate of the estate or his appointment as executor. We realize this is an area in which it is difficult to police professional standards, but circumstantial evidence as well as direct testimony may be relied upon to prove that solicitation has occurred.

Upon this record this court is constrained not to draw an inference the Gulbankians solicited the probate of estates by drafting wills designating themselves as executors or to be retained as attorneys by the executor. We are concerned, however, that the high percentage of such provisions in the wills drafted by the Gulbankians and by other attorneys in Racine county might well lead lay people and the public generally to conclude there has been solicitation. A lawyer must not only avoid solicitation but also the appearance of solitication so as not to damage the confidence the public has in the legal profession. We do not hold that a lawyer may not draft a will in which he is designated as executor or contains a direction to the executor to employ him in suggestive or even the mandatory language required by the *Estate of Sieben, supra,* if in fact that is the unprompted intent of his client; but the number of times this will occur will be few and the percentage in total of such wills drawn low.

Because this is the first disciplinary case which raises this important issue, we have spent some time giving guidelines for the future. This may not be the total

answer to the problem and improvements may be worked out on a case-to-case basis in the future.

*Therefore, It Is Ordered And Adjudged* that the complaint herein be, and it is hereby, dismissed.