In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Jay Andrew FELLI, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Respondent-Cross-Appellant,

v.

Jay Andrew FELLI,
Respondent-Appellant-Cross-Respondent.

Supreme Court

*No. 2004AP3382–D. Oral argument January 12, 2006.
—Decided June 22, 2006.*

2006 WI 73

(Also reported in 718 N.W.2d 70.)

For the respondent-appellant-cross-respondent there were briefs by *Terry E. Johnson, Heidi M. Miller,* and *Peterson, Johnson & Murray, S.C.,* Milwaukee, and oral argument by *Terry E. Johnson.*

For the complainant-respondent-cross-appellant there were briefs by *Robert G. Krohn* and *Roethe Krohn Pope LLP,* Edgerton, and oral argument by *Robert G. Krohn.*

¶ 1. PER CURIAM. Attorney Jay Andrew Felli has appealed from a referee's report concluding that he engaged in professional misconduct and recommending that his license to practice law in Wisconsin be suspended for a period of 18 months. The Office of Lawyer Regulation (OLR) has cross-appealed, arguing that the referee's findings that there was insufficient evidence to prove three of the counts alleged in the OLR's complaint are clearly erroneous. In addition, the OLR asserts that the recommended 18–month suspension inadequately addresses the severity of the misconduct and that the gravity of the offenses supports revocation of Attorney Felli's license to practice law.

¶ 2. We conclude that all of the referee's findings of fact, including those challenged by the OLR, are supported by satisfactory and convincing evidence. We also agree with the referee's conclusions of law that Attorney Felli engaged in professional misconduct. We conclude, however, that the appropriate discipline for the misconduct is a three-year suspension of Attorney Felli's license to practice law rather than the 18–month suspension recommended by the referee. We further agree with the referee that the costs of the proceeding, which total $33,400.72 as of January 19, 2006, should be assessed against Attorney Felli.

¶ 3. Attorney Felli was admitted to practice law in Wisconsin in 1994 and practices in Brookfield. In 1998 he received a private reprimand for failure to timely pay his Wisconsin State Bar dues. In 2005 he received a public reprimand for failing to act with reasonable diligence and promptness in representing a client and making misrepresentations to the OLR. *See In re Disciplinary Proceedings Against Felli,* 2005 WI 58, 281 Wis. 2d 25, 697 N.W.2d 42.

¶ 4. On December 30, 2004, while the prior disciplinary proceeding was still pending, the OLR filed a second complaint against Attorney Felli and also filed a motion seeking a temporary suspension of Attorney Felli's license on the ground that his continued practice of law posed a threat to the interests of the public and the administration of justice. This court denied the OLR's motion for a temporary suspension, but concluded that the motion raised significant concerns such that the court deemed it appropriate to expedite the disposition of the underlying proceeding.

¶ 5. The OLR's complaint alleged 15 counts of misconduct involving three client matters. All of the cases involved estate planning. Two financial planners, Stanley Zurawski and Ramzi Raad, were partners in a company called Lincoln Financial Planning. Zurawski and Raad presented financial planning seminars to target audiences 55 years of age and older. Sometime between 1995 and 1997 they decided to include an attorney in their seminars so they could refer clients back and forth. They asked Attorney Felli, who was married to Zurawski's cousin, to join them in the financial planning seminars.

¶ 6. The first client matter detailed in the OLR's complaint involved Attorney Felli's representation of R.W. In 1996 R.W. had executed a will, filed with the

Milwaukee County Probate Court, leaving her estate, which was valued at more than one million dollars at the time of her death two years later, to the Wisconsin Conservatory of Music and the Milwaukee Ballet Company. R.W. appointed her neighbor and his wife as her personal representatives.

¶ 7. R.W. attended an estate planning seminar at which Attorney Felli and Zurawski made presentations. Attorney Felli and Zurawski recommended that R.W. use trusts to carry out the charitable bequests. Attorney Felli prepared a revocable living trust and a charitable remainder unitrust that R.W. executed on June 18, 1997. The Wisconsin Conservatory of Music was named as the sole beneficiary under both trusts. R.W. herself was named as the original trustee of the living trust, with her neighbor and his wife as successor trustees. The neighbors were also appointed as the trustees of the charitable unitrust. R.W. executed a pour-over will that left any remaining assets at the time of her death to the living trust. A year later Attorney Felli prepared amendments to the trusts that deleted the Wisconsin Conservatory of Music as the sole beneficiary and substituted Civic Music as the beneficiary.

¶ 8. In June 1998 Zurawski's sister founded and incorporated a new piano school. Zurawski was initially on the school's board of directors. On July 13, 1998, less than one month after the last amendments to R.W.'s estate planning documents had been prepared and executed, Attorney Felli prepared new amendments removing Civic Music as the beneficiary of the trusts and naming Zurawski's sister's piano school as the sole beneficiary. The piano school did not apply for tax-exempt status until September 1998 and did not receive tax-exempt status until March 1999. The amendments dated July 13, 1998, also changed the trustees of both

trusts and removed the neighbor's wife as a co-trustee and appointed Attorney Felli as co-trustee of R.W.'s charitable remainder unitrust and as successor co-trustee of her living trust upon R.W.'s disability or death.

¶ 9. Attorney Felli did not discuss with R.W. any alternative trustees, such as financial institutions, nor did he question her about her reasons for appointing him as co-trustee with her neighbor, nor did he suggest that the neighbor might serve as sole trustee.

¶ 10. R.W. died on September 19, 1998, without having executed further changes to her estate plan and leaving the piano school as the sole beneficiary. Upon R.W.'s death, Attorney Felli served as co-trustee for both trusts, did legal work for the estate and trusts, and managed the estate and trust bank accounts. Zurawski handled trust investment accounts.

¶ 11. An attorney sent a copy of R.W.'s obituary notice to the Milwaukee County Probate Court and wrote to the Wisconsin Conservatory of Music and the Milwaukee Ballet Company to inform them that R.W. had a will on file with the court naming their organizations as beneficiaries of her estate. In January 1999 those organizations filed a petition for administration of R.W.'s 1996 will. On February 23, 1999, Attorney Felli filed the 1997 pour-over will, an objection to the probate of the 1996 will, and a petition for probate of the 1997 will. Various challenges to the 1997 will and trusts ensued, all of which were eventually settled with payments to the challengers by the estate and/or trusts. Attorney Felli retained outside counsel to represent the estate and trusts in those contests.

¶ 12. A section of the living trust document required the trustees to submit at least a semiannual report to beneficiaries regarding trust receipts, disbursements, and distributions. The trust's books and records

were also to be made available for inspection by the trust beneficiaries. The piano school received some distributions from the R.W. living trust between 1998 and 2001. Apparently no distribution was larger than $25,000.

¶ 13. In late 2001 Attorney Felli gave instructions to Zurawski to liquidate about $130,000 in trust assets. On December 19, 2001, the piano school's attorney wrote to Attorney Felli requesting that the school's accountant be allowed to review trust accounting records. The following day Attorney Felli informed the piano school it was being terminated as a trust beneficiary. The piano school was never provided with any accountings or records, and it received no further distributions from the trusts other than a lump sum payment in settlement of a civil action subsequently brought by the school. Upon termination of the piano school as a beneficiary, for a period of time there were no beneficiaries to whom the trustees were required to make distributions or accountings.

¶ 14. In January 2004 a grievance was filed with the OLR by Zurawski's sister.[1] In the course of the OLR's investigation, Attorney Felli was requested to provide, among other things, trust documents, an accounting of the $130,000 that had been liquidated, an inventory of trust and estate assets, and an accounting of all legal fees, trustee fees, and other amounts Attorney Felli had paid himself or his law firm out of R.W.'s trust and estate assets.

¶ 15. Attorney Felli responded to the OLR on March 30, 2004, but failed to provide any documents. After a follow-up request on April 16, 2004, Attorney Felli provided documents related to the living trust but

---

[1] The record indicates that Zurawski and Attorney Felli had a falling out but that Attorney Felli remains on good terms with Raad.

not to the charitable remainder unitrust. In response to a third request from the OLR, on June 2, 2004, Attorney Felli provided a copy of the charitable remainder unitrust document and one amendment that was dated after R.W.'s death. Attorney Felli explained his initial failure to provide unitrust documents by representing to the OLR that the charitable remainder unitrust had been combined with the living trust at the time of R.W.'s death, but this statement was false since Attorney Felli had executed an amendment to the unitrust six months after R.W.'s death and assets were still being held in a separate unitrust investment account as late as 2002, four years after R.W. died.

¶ 16. With regard to the OLR's request for an accounting of the $130,000 in funds that Zurawski said he had liquidated in the latter part of 2001, Attorney Felli originally represented that he had used the $130,000 to pay approximately $35,000 for legal fees to outside counsel, $2500 for legal fees to himself, and $50,000 to $55,000 for distributions to the piano school. Attorney Felli represented that the balance was held in the trust's operating account. When the OLR requested more information, Attorney Felli provided a second accounting. Rather than showing that he had received $2500 for legal fees as he had represented in the first accounting, the second accounting itemized five checks payable to Attorney Felli's law firm totaling over $26,000.

¶ 17. Bank account records established that neither of Attorney Felli's accountings was correct. After subpoenaing bank records, the OLR learned that during the same time period covered by Attorney Felli's accounting, he wrote checks to himself or his law firm in excess of $86,000. Attorney Felli's accounting to the OLR misrepresented the payee on two checks he had

538

written to himself. Attorney Felli's accounting showed that check 1087 for $7961 was payable to the Gonyo Law Offices, when in fact the check was payable to the Felli Law Offices. Attorney Felli's accounting also showed that check 1090 for $5000 was paid to Attorney David DeToffel, when in fact that check was also payable to the Felli Law Offices.

¶ 18. Attorney Felli's accounting referenced two liquidations from trust investment accounts: $60,000 that was liquidated in April of 2001 and $65,000 that was liquidated in May of 2001. The bank records showed that in addition to these two liquidations, another $100,750 was liquidated between July and December 2001. Attorney Felli's accounting made no reference to receiving the latter funds and offered no accounting of how the funds were disbursed.

¶ 19. The OLR also requested Attorney Felli to produce a schedule of assets transferred to the R.W. living and charitable remainder unitrust during R.W.'s lifetime, an inventory of trust assets at the time of R.W.'s death, and an inventory of R.W.'s estate assets. Attorney Felli never provided the OLR with any of this information.

¶ 20. With respect to the OLR's request for an accounting of all legal fees Attorney Felli had paid himself from R.W.'s estate and trusts, Attorney Felli provided the OLR with a billing printout showing that during a 14½ month period starting just before R.W. died, from mid-September 1998 through November 30, 1999, Attorney Felli had earned and billed legal fees of $105,961.56. He also provided the OLR with sporadic bills between May 1, 2000, and July 31, 2001. He provided no billing records after August 1, 2001, although he apparently continues to represent the trusts, and the R.W. probate proceeding is still pending.

¶ 21. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Felli's representation of R.W.:

> COUNT ONE—By preparing trust documents and subsequent trust amendments that named himself as a co-trustee of the [R.W.] Living Trust and the [R.W.] Charitable Remainder Unitrust, Felli prepared legal documents which required that the lawyer's services be used in relation to that document, in violation of SCR 20:7.3(f).[2]

> COUNT TWO—By charging over $105,000.00 for legal fees to the [R.W.] estate and trusts for a 14½–month period, Felli charged fees that were unreasonable and clearly excessive, in violation of SCR 20:1.5.[3]

---

[2] SCR 20:7.3(f) provides that "[e]xcept as permitted under SCR 11.06, a lawyer, at his or her instance, shall not draft legal documents, such as wills, trust instruments or contracts, which require or imply that the lawyer's services be used in relation to that document."

[3] SCR 20:1.5 provides: Fees.

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

540

COUNT THREE—By representing [R.W.], her trusts and estate when Felli's independent professional judgment on behalf of his client was influenced by his own

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and if there is a recovery, showing the remittance to the client and the method of its determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee:

(1) in any action affecting the family, including but not limited to divorce, legal separation, annulment, determination of paternity, setting of support and maintenance, setting of custody and physical placement, property division, partition of marital property, termination of parental rights and adoption, provided that nothing herein shall prohibit a contingent fee for the collection of past due amounts of support or maintenance.

(2) for representing a defendant in a criminal case or any proceeding that could result in deprivation of liberty.

(e) A division of fee between lawyers who are not in the same firm may be made only if:

541

pecuniary interests in acquiring control and possession of [R.W.]'s assets for himself and for the family of a financial advisor with whom he had a close working relationship, Felli's representation of [R.W.], her trusts and estate was materially limited by the interests of a third party and his own financial interests, in violation of SCR 20:1.7(b).[4]

COUNT FOUR—By administering [R.W.]'s trusts in such a way that he terminated all trust beneficiaries and then paid himself at least $374,000 of [R.W.]'s assets, Felli engaged in conduct which involved dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).[5]

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all the lawyers involved and is informed if the fee will increase as a result of their involvement; and

(3) the total fee is reasonable.

[4] SCR 20:1.7(b) provides: Conflict of interest: general rule.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents in writing after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[5] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

COUNT FIVE—By willfully failing to provide relevant information, answer questions fully, and furnish requested documents in his responses to OLR, and by making misrepresentations in his disclosures to OLR, Felli violated SCR 22.03(6).[6]

¶ 22. The second client matter detailed in the OLR's complaint involved Attorney Felli's representation of L.D. L.D. was introduced to Attorney Felli in early 1998. L.D. had been blind since she was ten years old and was living at the Badger Home for the Blind. In a will dated May 14, 1987, L.D. had appointed her brother, A.D., to be her personal representative. On March 12, 1998, L.D. executed a will prepared by Attorney Felli. The will included bequests to family members and several charities and named A.D. as personal representative. On the same date, L.D. executed documents making her brother her financial and health care power of attorney.

¶ 23. In early 1999 Attorney Felli and Zurawski met with L.D. to discuss the creation of a charitable remainder unitrust to carry out L.D.'s charitable bequests. At that time, according to a memo prepared by Zurawski, L.D.'s primary assets consisted of some annuities and a brokerage account totaling $136,000. On February 17, 1999, L.D. executed a will and charitable remainder unitrust prepared by Attorney Felli. The will appointed L.D.'s brother as her personal representative, and the trust document appointed Attorney Felli as trustee. Attorney Felli acknowledged to the OLR that

[6] SCR 22.03(6) provides: Investigation.

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

543

■■■■■■■■

■■■■■■■■

he did not discuss with L.D. any alternatives to his appointment as trustee, such as the use of a corporate trustee, friend, or relative.

¶ 24. Attorney Felli does not have billing records for the L.D. matter but said he received legal fees of between $1500 and $2000 for his work. After the charitable remainder unitrust was executed, Attorney Felli never spoke with L.D. again. Pursuant to the unitrust, Attorney Felli, as trustee, was required to make annual distributions to L.D. in the amount of 5 percent of the market value of the trust assets, as valued on the first day of each taxable year. Attorney Felli and Zurawski arranged to have an annual disbursement equal to 5 percent of the trust's initial total value taken from one fund that charged no penalty for withdrawal. Attorney Felli should have performed an annual accounting allowing him to make annual adjustments and ensure that L.D. was receiving 5 percent, but he failed to perform such accountings. He also never filed fiduciary income tax returns for the trust.

¶ 25. The L.D. trust granted "reasonable compensation" to the trustee. Zurawski arranged for disbursements totaling 2 percent of the initial trust value to Attorney Felli, from which Attorney Felli was to draw his fees. In the beginning of calendar year 2000, Attorney Felli received an annuity check payable to the trust in the amount of $2395.72. Attorney Felli opened a checking account as trustee and deposited the annuity payment to that account. He then wrote two checks to himself for trustee fees, one in the amount of $720 and another in the amount of $1125. In 2001 Attorney Felli deposited another check in the amount of $2395.72 into the checking account and again wrote two checks to himself for trustee fees, one for $500 and the other for

$2000. In 2002 Attorney Felli deposited another $2395.72 check and wrote himself checks for $800 and $2000.

¶ 26. On November 7, 2002, L.D. removed Attorney Felli as trustee of her trust and replaced him with her brother. Attorney Felli was notified of his removal via a letter from the brother's attorney dated November 18, 2002.

¶ 27. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Felli's representation of L.D.:

> COUNT SIX—By preparing a charitable remainder unitrust that named himself as trustee, Felli drafted a legal document which required that the lawyer's services be used in relation to that document, in violation of SCR 20:7.3(f).
>
> COUNT SEVEN—By failing to investigate and inform [L.D.] of the suitability of a charitable remainder trust, by failing to advise [L.D.] about the risks of creating a charitable remainder trust with respect to her potential eligibility for Title XIX benefits, by failing to advise [L.D.] that she could consider corporate trustees or individuals other than Felli as a trustee, by failing to see that assets named in Schedule A of the trust were timely transferred to the trust, by transferring an asset to the trust that was not included in Schedule A without the knowledge or consent of the donor, by failing to file tax returns for the trust, and by failing to prepare annual trust accountings and make quarterly distributions to [L.D.] as required under the terms of the trust, Felli failed to provide competent representation to a client, in violation of SCR 20:1.1.[7]

---

[7] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation re-

COUNT EIGHT—By failing to investigate and inform [L.D.] of the suitability of a charitable remainder trust, by failing to advise [L.D.] about the risks of creating a charitable remainder trust with respect to her eligibility for Title XIX benefits, and by failing to advise [L.D.] that she could consider corporate trustees or individuals other than Felli as trustee, Felli failed to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, in violation of SCR 20:1.4(b).[8]

COUNT NINE—By failing to arrange timely transfer of trust assets to [L.D.]'s trust and by failing to obtain a timely employer identification number for the trust, Felli failed to act with reasonable diligence and promptness in representing a client, in violation of SCR 20:1.3.[9]

COUNT TEN—By having a personal pecuniary interest in receiving annual trustee fees from a trust he created for [L.D.] without determining whether the trust was in his client's best interests, Felli represented a client when the representation of that client might be materially limited by his own interests, in violation of SCR 20:1.7(b).

COUNT ELEVEN—By creating a Charitable Remainder Unitrust for [L.D.], that provided no financial or tax benefits to his client but personally benefited Felli; by paying himself over $7,000.00 from a trust annuity when he rendered little or no trustee services to warrant such payment; by failing to provide his client or successor counsel with any accounting information

quires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[8] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[9] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

including checks written to himself; and by failing to turn over to the successor trustee an annuity check that was sent to Felli after he had been discharged as trustee, Felli engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).

¶ 28. The final client matter detailed in the OLR's complaint involved Attorney Felli's representation of W.G. W.G. used Raad's services to handle investments for her. Sometime in 2001 W.G. and Raad discussed the possibility of her giving him a gift or bequest in addition to the commissions he earned on her transactions. Raad had researched how W.G. might properly give him such a benefit and determined it should be done through a trust. In April 2002, when W.G. was in her 80s, Raad purchased an annuity worth about $30,000 for her. Raad suggested to W.G. that she change her estate plan to include a trust, and W.G. agreed. Raad told her she could appoint as trustee of the trust the lawyer who would draft the trust, and he recommended Attorney Felli. Raad's purpose in referring W.G. to Attorney Felli was to have him set up a trust that would facilitate W.G. giving Raad money.

¶ 29. Attorney Felli prepared estate planning documents for W.G., which she signed in May 2002. The documents included a new will, a living trust, a financial power of attorney, and a health care power of attorney. A provision in the trust was a bequest to Raad giving him the proceeds of the annuity he had purchased for W.G. about a month earlier. Although Attorney Felli had met W.G. less than a month before preparing the documents, the documents he prepared appointed himself not only as successor trustee to W.G. for her living trust, but also as personal representative of her estate, as her financial power of attorney with immediate authority to act on her

behalf, as nominated guardian in the event she became incompetent, and as her alternative health care power of attorney.

¶ 30. Attorney Felli said he did not solicit appointment to the various fiduciary positions in W.G.'s estate plan, but that Raad had done so. Attorney Felli said he did discuss alternatives with her, but that discussion failed to elicit the name of I.B., a personal friend of W.G. for 50 years and the person named as her personal representative in her 1998 will, as well as her power of attorney and health care power of attorney. Attorney Felli said I.B.'s name never came up in his discussions with W.G.

¶ 31. The W.G. living trust was 66 pages in length. W.G. did not sign or initial any of the first 65 pages, and her signature appeared only on the last page. Attorney Felli was the only witness to the document. The will Attorney Felli prepared for W.G. left all of her estate assets to the living trust "dated May 15, 2002," although the living trust W.G. signed was dated May 16, 2002. Raad and Attorney Felli served as witnesses to W.G.'s signature on the will.

¶ 32. The trust was funded with all of W.G.'s property that was permitted by law to be held in trust. The will poured over any of W.G.'s assets at the time of her death to the living trust. The living trust gave all trust property not previously distributed, such as the specific bequest to Raad, to W.G.'s minor grandnieces and nephews on her death. It gave her trustee significant discretion as to what distributions would be made to those heirs before each reached age 25.

¶ 33. W.G.'s health care power of attorney named a friend of W.G. as her primary health care agent and named Attorney Felli as her alternate health care agent. The primary health care agent was not provided

with a copy of the document or asked to sign it. The only agent who signed the document and agreed to act as W.G.'s health care agent was Attorney Felli. Raad and Attorney Felli served as witnesses to W.G.'s signature on the health care power of attorney and stated they were not entitled to, and did not have a claim on, the principal's estate. Both Attorney Felli and Raad were aware that Raad had been left a substantial bequest under W.G.'s trust. I.B. was never informed she had been replaced as the personal representative in W.G.'s will and as her power of attorney and health care power of attorney.

¶ 34. On May 24, 2002, an insurance company issued a $1750 check to W.G. for a policy she had acquired through Raad. The check was endorsed by W.G. and signed over to the Felli Law Offices, evidently as payment for Attorney Felli's legal services. Using his power of attorney, Attorney Felli sent a change of beneficiary form to the insurance company changing the primary beneficiary to the W.G. Living Trust dated May 16, 2002, J.A. Felli, Trustee. In fact, W.G., not Attorney Felli, was the trustee of the trust at that time. Attorney Felli did not provide the insurance company with a copy of the trust agreement as they required.

¶ 35. After preparing the May 2002 documents, Attorney Felli had no further contact with W.G. beyond a possible phone call or two related to the insurance check or the transfer of assets to the trust. Around April 2003 I.B. spoke to W.G. about her taxes and W.G. showed I.B. the documents that had been prepared by Attorney Felli. I.B. then worked with another attorney to prepare new estate planning documents for W.G., effectively voiding all documents prepared by Attorney Felli.

¶ 36. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Felli's representation of W.G.:

> COUNT TWELVE—By preparing a will that appointed Felli as personal representative of [W.G.]'s estate, by preparing a living trust that appointed Felli as successor trustee upon [W.G.]'s death or disability, by preparing a power of attorney that gave Felli immediate authority to handle [W.G.]'s financial affairs and authority to immediately act as trustee of [W.G.]'s living trust, and that nominated him to serve as guardian in the event of [W.G.]'s incapacity, and by preparing a medical power of attorney that appointed Felli as a health care agent, Felli drafted legal documents which require or imply that the lawyer's services are to be used in relation to that document, in violation of SCR 20:7.3(f).

> COUNT THIRTEEN—By preparing a will for [W.G.] that gave her assets to a nonexistent May 15, 2002, living trust; by failing to have the primary health care agent execute [W.G.]'s health care power of attorney; by appointing himself, a stranger to [W.G.], as proposed guardian, power of attorney, and alternative health care agent; by using a witness to [W.G.]'s health care power of attorney who falsely stated that he did not have a claim on [W.G.]'s estate; and by preparing a trust that Felli himself acknowledged he expected [W.G.] to change at any time, Felli failed to provide competent representation to a client, in violation of SCR 20:1.1.

> COUNT FOURTEEN—By preparing estate planning documents under which Felli and the financial advisor, who was a business associate of Felli's, stood to financially benefit from execution of the documents, Felli represented a client in such a way that his representation of the client was materially limited by the interests of a third party and the lawyer's own interest, in violation of SCR 20:1.7(b).

COUNT FIFTEEN—By preparing legal documents for [W.G.], an 87–year-old woman whom Felli had just met, that gave Felli immediate financial control over all of [W.G.]'s assets and appointed Felli as personal representative of [W.G.]'s estate, trustee of her trust, health care power of attorney, and nominated guardian upon [W.G.]'s incapacity and by bequeathing to the financial advisor and business associate of Felli, an annuity that the financial advisor had just sold to [W.G.], Felli engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).

¶ 37. Attorney John Nicholas Schweitzer was appointed referee in the matter and a hearing was held in April 2005. The referee issued his report on May 31, 2005. The referee noted that the central activity that led to all of the charges in the OLR's complaint was Attorney Felli's preparation of estate plans that required or implied his services, a prima facie violation of SCR 20:7.3(f). The referee said the dispute between the OLR and Attorney Felli centered on the exception to SCR 20:7.3(f) created by this court in *State v. Gulbankian,* 54 Wis. 2d 605, 196 N.W.2d 733 (1972). The referee noted that *Gulbankian* explained:

> It is clear an attorney cannot solicit either directly or by any indirect means a request or direction of a testator that he or a member of his firm be named executor or be employed as an attorney to probate the estate. In those fairly rare cases where a client, because of the unusual familiarity of the attorney with the testator's business or family problems or because of a relationship that transcends the ordinary client-attorney relationship, asks his attorney to act as executor or to provide for his employment to probate the estate, there is no solicitation.

> . . . .

> ... We do not hold that a lawyer may not draft a
> will in which he is designated as executor or contains a
> direction to the executor to employ him ... if in fact
> that is the unprompted intent of his client; but the
> number of times this will occur will be few and the
> percentage in total of such wills drawn low.

*Id.* at 610–12.

¶ 38. The referee said *Gulbankian* stands for the proposition that there must be a legitimate reason for the attorney to be chosen over all other potential executors or trustees. He said that in the absence of evidence that Attorney Felli had a significant relationship or an unusual familiarity with the testator's affairs, he must be found to have violated the prohibition on drafting documents, especially wills or trusts, that require or imply the use of his own services.

¶ 39. The referee noted that the OLR presented expert testimony on the topic from Attorney Lewis Perlson, who specializes in estate planning and wrote part of a handbook on estate planning in Wisconsin. Attorney Perlson expressed the opinion that many of Attorney Felli's actions violated supreme court rules, although Attorney Perlson himself testified that he serves as trustee on a small number of trusts set up by his clients.

¶ 40. The referee noted that at the time of the hearing in this case all three of Attorney Felli's clients were unavailable as witnesses. R.W. had died, L.D. was in a nursing home with a poor memory, and W.G. was in a care facility with the beginning of dementia at age 90. Other witnesses were called to testify about Attorney Felli's representation of those three clients, and evidence was presented from three other clients on the question of whether Attorney Felli routinely suggested

himself as trustee or personal representative or power of attorney without exhaustively exploring other alternatives.

¶ 41. The referee said the question of whether Attorney Felli or Raad suggested appointing Attorney Felli in the various fiduciary capacities was irrelevant since *Gulbankian* prohibits both direct and indirect solicitation; Attorney Felli made as many as 400 joint presentations with Raad and Zurawski; and the business relationship that existed between Attorney Felli and Raad and Zurawski meant that the suggestion by Raad or Zurawski that Attorney Felli be appointed would qualify as an indirect solicitation.

¶ 42. The referee noted that the testimony of three of Attorney Felli's other clients showed a pattern in which Attorney Felli failed to investigate alternative trustees and either offered his own services or allowed Raad and Zurawski to make the suggestions. The referee reasoned that the testimony from these other clients reinforced the likelihood that on the three occasions charged in the OLR's complaint, Attorney Felli either offered his services or made only a half-hearted effort to investigate other alternatives.

¶ 43. The referee said the fact Attorney Felli was unaware of the existence of W.G.'s friend, I.B., showed that Attorney Felli "failed miserably to meet his obligation" to investigate other alternatives to appointing himself in various fiduciary capacities. The referee said Raad's testimony regarding his involvement in the W.G. case was at points to be self-serving, and the referee said Raad's testimony that he did not really know he was being left something by W.G. was patently false and established Raad as a person whose truthfulness was not to be relied upon. In the referee's opinion, Attorney Felli's representation of W.G. represented the "clearest

and worst violation of the three presented in the complaint." The referee found that all four counts in the OLR's complaint relating to Attorney Felli's representation of W.G. were proven by clear, satisfactory, and convincing evidence.

¶ 44. With respect to Attorney Felli's representation of L.D., the referee found that Counts Six, Seven, and Eight of the OLR's complaint were proven by clear, satisfactory, and convincing evidence. The referee said there was no evidence that Attorney Felli discussed any alternatives to naming himself as trustee, and the referee found that Attorney Felli failed to explain matters to the extent reasonably necessary to permit L.D. to make informed decisions.

¶ 45. The referee found there was insufficient evidence to support the allegations contained in Counts Nine, Ten, and Eleven of the OLR's complaint regarding Attorney Felli's handling of the L.D. matter. The referee said the arrangement whereby 2 percent of the trust value was withdrawn annually to cover Attorney Felli's fees was not shown to be fraudulent, and he found there was insufficient proof that the $7145 Attorney Felli received during the three years he served as trustee of L.D.'s trust was unreasonable.

¶ 46. With respect to Attorney Felli's representation of R.W., the referee found there was sufficient proof to support the allegations in Counts One, Three, and Five of the OLR's complaint. The referee said there was no evidence that Attorney Felli discussed any alternative to himself serving as trustee and that Attorney Felli violated SCR 20:7.3(f) in preparing R.W.'s estate plan. The referee also found that by representing R.W., her trust and estate, when Attorney Felli's independent professional judgment on behalf of R.W. was influenced by the pecuniary interests of the family of a financial

advisor with whom Attorney Felli had a close working relationship, Attorney Felli's representation was materially limited by the interests of a third party and by his own financial interests, in violation of SCR 20:1.7(b). The referee further found that by willfully failing to provide relevant information, failing to answer questions fully, failing to furnish requested documents in his responses to the OLR, and by making misrepresentations to the OLR, Attorney Felli violated SCR 22.03(6).

¶ 47. The referee concluded that the OLR failed to meet its burden of proof with respect to Counts Two and Four of the complaint. The referee said the OLR's allegations that Attorney Felli charged the R.W. estate fees that were unreasonable was too speculative to satisfy the burden of proof. The referee said Attorney Felli's testimony regarding the allegedly chaotic state of affairs in R.W.'s house and in her finances after her death was unrefuted, and Attorney Felli testified that he invested hundreds of hours defending the trust against the various lawsuits that were filed. The referee agreed, however, that Attorney Felli's accounting was incomplete and confusing and that some of the testimony strongly suggested a misappropriation of funds, as alleged in Count Four of the complaint, and an attempt by Attorney Felli to escape detection by preventing the examination of trust records by the piano school or others.

¶ 48. In discussing the appropriate discipline to be imposed for Attorney Felli's misconduct, the referee noted that the OLR requested the revocation of Attorney Felli's license. Attorney Felli asked for a public reprimand or, at most, a 60–day suspension. The referee noted that the purpose of discipline is to prevent further misconduct by the attorney, deter other attorneys from engaging in similar misconduct, and to foster

the rehabilitation of the offender. The referee said anything less than a lengthy suspension would fail to impress on Attorney Felli the need to practice law with more attention paid to the rules of procedure and professional conduct. The referee said:

> This referee's visceral reaction to the evidence of an attorney feathering his own nest, and the nests of his close associates, at the expense of his clients and their best interests, was that revocation would be too lenient. This is partly because Mr. Felli showed no hint of acknowledging that he might have overstepped the bounds, nor any remorse over having tried to take advantage of a vulnerable population and a very small loophole in the law, which he stretched to the breaking point and far beyond, for his own benefit and the benefit of his business associates. Revocation would also be lenient, however, in that it would leave him in various positions of trust granted to him by a still-unknown number of clients, for which he could not be held accountable as a member of the legal profession.

> Although Mr. Felli's reprehensible actions amply justify revocation, it is possible that he can learn to conform his behavior to accepted standards. This suggests leaving open the possibility of reinstating his license in less than five years for the purpose of rehabilitation. In addition, the prospect of reinstating his license might encourage him to discharge his various duties under some of his clients' estate plans conscientiously and punctiliously, and to prepare an accounting of his management of the assets placed in his care . . . I recommend a suspension of eighteen months.

The referee also recommended that Attorney Felli pay the full costs of the proceeding.

¶ 49. Attorney Felli has appealed all of the referee's conclusions of law finding that he violated any

supreme court rules. Attorney Felli's principal argument is that the referee misinterpreted and misapplied SCR 20:7.3(f) and this court's decisions in *Gulbankian* and *Schmeling v. Devroy,* 109 Wis. 2d 154, 325 N.W.2d 345 (1982).[10] Attorney Felli notes that in *Gulbankian,* the attorneys filed 135 wills, 71 of which directed their employment. The Gulbankians contended their clients had spontaneously directed that they appoint themselves, and they noted since they spoke the same language as their clients and shared a common ethnic background they shared a closer relationship than ordinarily exists between other attorneys and clients. This court declined to infer that the Gulbankians solicited the probate of the various estates.

¶ 50. Attorney Felli argues that *Gulbankian* did not hold that an attorney is presumed to have acted unethically and bears the burden of proving he had a significant relationship or an unusual familiarity with the testator's affairs. He argues one reason R.W., L.D., and W.G. all selected him to serve in a fiduciary capacity was because there was no other logical choice since none of the women had husbands, none had children, R.W. and W.G. had no family members living in Wisconsin, and L.D. had only a distant relationship with a brother in the state.

¶ 51. Attorney Felli points out that the referee found that the practice of the OLR's expert witness also appeared to be improper as indirect solicitation. Attorney Felli asserts that any error on his part should be

---

[10] In *Schmeling v. Devroy,* 109 Wis. 2d 154, 325 N.W.2d 345 (1982), Justice Steinmetz, in a dissent, highlighted the importance and difficulty of drawing a line between an unusual familiarity with a client's affairs, which would justify a departure from the rule under *Gulbankian* and an attorney's usual familiarity with a client's affairs.

seen as a product of the uncertainty as to the interpretation and scope of the rules rather than a disregard for or intentional violation of the rules. He contends there is no direct evidence that he persuaded any of the clients to name him in any fiduciary capacity. He says even assuming his testimony in this regard is not accepted, there is no evidence as to how and why the various appointments were made (since none of the three clients were available to testify at the hearing) and he argues the OLR cannot prove allegations by clear, convincing, and satisfactory evidence by an inference of questionable value without any substantiating testimony. Attorney Felli asserts he did have a substantial relationship with all three clients and that he worked with R.W. for at least 13 months and had been L.D.'s lawyer for over one year at the time he prepared the charitable trust for her.

¶ 52. Attorney Felli also argues that the OLR failed to meet its burden of proof of showing he violated SCR 20:1.7(b) in his handling of the R.W. and W.G. matters by having his professional judgment influenced by his relationship with the Zurawski family. He again notes that since R.W. did not testify, it can never be known for sure why she chose the piano school run by Zurawski's sister as the beneficiary. Attorney Felli also asserts he did not have a conflict of interest in the W.G. matter simply because Raad, with whom Attorney Felli had a longstanding business relationship, stood to financially benefit from the W.G. trust.

¶ 53. Attorney Felli further argues that the referee's finding that he willfully failed to cooperate with the OLR during its investigation is clearly erroneous. He contends there was ample evidence that he tried to satisfy the OLR's numerous, detailed requests for information. He also asserts that there is insufficient proof

that he violated SCR 20:1.1 by not providing L.D. with competent representation. He says he was not a tax expert, but Zurawski's wife, an accountant, who did L.D.'s personal taxes, failed to remind him that the split interest tax form had to be filed.

¶ 54. Attorney Felli says if L.D. was harmed in any way it was only that she was assessed a modest annual fee and any shortcomings in his performance with regard to the tax forms do not rise to the level of a disciplinary rule violation. With respect to the OLR's claim that Attorney Felli failed to provide competent representation because he did not prepare an annual trust accounting for L.D., Attorney Felli says it was not improper for him to rely on Zurawski to do the mathematical calculations and paperwork.

¶ 55. Attorney Felli also asserts there was insufficient proof that he violated SCR 20:8.4(c) by allowing Raad to witness W.G.'s power of attorney and by failing to identify W.G. as a client during the OLR's investigation. Attorney Felli says the evidence shows that Raad's attestation, when he witnessed W.G.'s power of attorney, that to the best of his knowledge he was not entitled to and had no claim on the principal's estate, was "technically true" since no one ever told Raad he was a beneficiary under W.G.'s estate plan. Attorney Felli says even assuming Raad knew he was going to benefit from the W.G. trust, there was still nothing improper about Raad signing the W.G. health care power of attorney as a witness.

¶ 56. Attorney Felli argues that even if all counts of misconduct found by the referee should be affirmed by this court, the recommended 18–month suspension is much too harsh. He notes that nearly all of the counts of misconduct found by the referee concerned the solicitation claim and he argues that the limits as to

when and in what context a lawyer can mention to a client that the lawyer could serve as a trustee are unclear, so the discipline imposed in this case should be mitigated by the fact that it occurred in a "gray area" in legal ethics.

¶ 57. In response to the arguments raised in Attorney Felli's appeal, the OLR argues the referee appropriately interpreted and applied existing law in determining that Attorney Felli violated SCR 20:7.3(f) as to each of the three clients. The OLR says *Gulbankian* was one of those "rare cases" where the attorney and clients had a common ethnic background and a close personal relationship leading to this court's conclusion that solicitation had not occurred. The OLR says the facts of this case are dramatically different. It says in each instance, Attorney Felli met the elderly clients at financial planning seminars at which he worked "hand in glove" with Raad and Zurawski.

¶ 58. The OLR says in each instance Attorney Felli had no pre-existing personal or professional relationship with the elderly clients. The OLR says Attorney Felli and the financial planners made income off the efforts of the other. The OLR says there was no legitimate reason for Attorney Felli, a virtual stranger, to be chosen by these clients over other potential executors or trustees; Attorney Felli directly, or indirectly through the financial planners, solicited his service in such capacities, and contrary to Attorney Felli's statements, there were other logical choices, individuals or institutions, to serve in the fiduciary capacities filled by Attorney Felli.

¶ 59. The OLR also argues that Attorney Felli's representation of R.W. and W.G. was materially limited by the interests of third parties and by Attorney Felli's own financial interests, in violation of SCR 20:1.7(b). The OLR argues at no time did Attorney Felli make

sufficient written disclosures to his clients concerning these conflicts. The OLR also argues that by failing to provide the OLR with relevant information and by making misrepresentations to the OLR, Attorney Felli violated SCR 22.03(6).

¶ 60. The OLR cross-appealed the referee's legal conclusions that there was a failure of proof as to Counts Two, Four, and Ten of the OLR's complaint. The OLR also appealed from the referee's recommended 18–month license suspension and asserts that revocation of Attorney Felli's license is appropriate.

¶ 61. The OLR argues that the evidence submitted in the R.W. matter supports a finding that Attorney Felli's fees were unreasonable. The OLR notes that the referee acknowledged the investigator's challenge in making sense of records that bore almost no relationship to information she had received from Attorney Felli, and the OLR says in effect Attorney Felli has received the benefit on the fee question out of the confusion he created. The OLR says the only thing that is speculative is how much more money Attorney Felli may have received from the R.W. estate and trusts beyond what he admits charging. The OLR says the figures the investigator used to determine that Attorney Felli had taken at least $374,000 from the R.W. estate and trust are fully documented.

¶ 62. The OLR notes the only independent expert testimony on the subject of the reasonableness of Attorney Felli's fees was offered by the OLR's expert, Attorney Perlson, who said it seemed to be impossible that someone would take so long a time to carry out the duties that were described in the billings. The OLR says although Attorney Felli spoke in general terms about the chaotic state of affairs in R.W.'s house and finances following her death, he produced nothing at the hearing

that would substantiate or justify the amounts he charged. The OLR says while the referee found its investigator's conclusions about the billings were too speculative based on the information provided, it was Attorney Felli himself who provided the information.

¶ 63. The OLR says the referee's findings of fact essentially lead to but one conclusion: Attorney Felli acted dishonestly or deceitfully in handling R.W.'s affairs and paying himself fees. The OLR contends there was a premeditated scheme on Attorney Felli's part to systematically acquire control over R.W.'s assets over a period of time. It says the piano school was named a beneficiary under circumstances suggesting a cozy relationship between Zurawski's family and Attorney Felli. Once the piano school was in place as a beneficiary, the OLR says even Zurawski and his sister became suspicious of Attorney Felli's activities and one day after the piano school requested an opportunity to review trust accountings, as it was entitled to do under the trust, Attorney Felli sent a letter summarily suspending the school as a beneficiary.

¶ 64. The OLR says Attorney Felli clearly did not want anyone to obtain an accounting of the R.W. trust since such an accounting would have shown significant withdrawals of funds by Attorney Felli. The OLR says in the course of its investigation it repeatedly asked Attorney Felli to provide an accounting of the assets he was administering and the amounts he had paid himself and he offered various excuses why he could or would not do so: his co-trustee objected, he did not keep the information in the ordinary course of business, and he was still in the process of assembling information. The OLR says it presented Attorney Felli with its calculations, which showed he had taken at least $374,000 from the R.W. estate and trust, and while he offered

general criticism he provided no specific information concerning any inaccuracies nor any independent summaries or conclusions of his own. The OLR says the documents in the record lead to but one conclusion: Attorney Felli used his control over R.W.'s assets to pay himself a sizable percentage of her estate.

¶ 65. The OLR also argues it is undisputed that Attorney Felli had a personal pecuniary interest that conflicted with L.D.'s interests, in violation of SCR 20:1.7(b). The OLR says given L.D.'s modest income there were no significant tax savings resulting from a possible charitable deduction and the result is that Attorney Felli prepared trust documents which were of no benefit to L.D. but which served as a vehicle for Attorney Felli to receive ongoing annual trustee fees of over $2000 per year at L.D.'s expense.

¶ 66. The OLR argues that the referee's recommended 18–month suspension inadequately addresses the severity of Attorney Felli's misconduct. The OLR says contrary to Attorney Felli's argument that any misconduct he might have committed occurred in a "gray area" in ethics, Attorney Felli positioned himself in a fiduciary capacity in his clients' estates contrary to the unambiguous guidelines set forth in *Gulbankian*. It says there is a pattern of misconduct with respect to the three clients since all of them were unmarried, elderly, and without any close family. The OLR says after being introduced to the three women by financial planners with whom he had a long and close professional relationship, over time Attorney Felli positioned himself in various fiduciary capacities permitting him to make important personal decisions for his clients and to avail himself of their assets. The OLR notes that Attorney Felli is an experienced attorney who does not have available the defense of being a novice who was in over

his head. It argues that under the circumstances revocation of Attorney Felli's license is appropriate.

¶ 67. This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. The referee's findings of fact are not clearly erroneous, and we adopt them. We also agree with the conclusions of law that flow from the referee's findings of fact.

██

¶ 68. Attorney Felli's conduct in appointing himself as a trustee and/or personal representative in the three client matters violated SCR 20:7.3(f) and did not fall under the limited exceptions carved out in *Gulbankian.* Unlike the attorneys in *Gulbankian,* who shared a common ethnic background with their clients and had served as longtime attorneys for the clients, Attorney Felli's contact with the three clients was very limited. He met all three women at financial planning seminars conducted jointly with Raad and/or Zurawski, and he drafted the wills and trusts naming himself in various fiduciary capacities soon after meeting the women. The unusual familiarity with the testators' affairs that excused the attorney's conduct in *Gulbankian* simply does not exist here.

¶ 69. We also agree with the referee's conclusion that Attorney Felli violated SCR 20:1.7(b) by represent-

ing R.W. under circumstances where Attorney Felli's independent professional judgment was influenced by his own pecuniary interests in acquiring control of R.W.'s assets for himself and/or for Zurawski's sister's piano school. Similarly, we agree that by preparing estate planning documents for W.G. under the terms of which both Attorney Felli and his associate, Raad, stood to benefit financially, Attorney Felli also violated SCR 20:1.7(b).

¶ 70. The referee's other findings of fact, which led to his conclusion that Attorney Felli violated SCR 22.03(6) by making misrepresentations to the OLR in the R.W. matter; that he violated SCR 20:1.1, by failing to provide competent representation to L.D. and W.G.; and that he violated SCR 20:8.4(c), by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in his representation of W.G. are also supported by the record and we adopt them.

¶ 71. After careful review of the record, we reject the arguments made in the OLR's cross-appeal, and we affirm the referee's findings of fact which led to his conclusions of law that the OLR failed to meet its burden of proof with respect to Counts Two, Four, and Ten of the complaint. We uphold the referee's conclusions with respect to Counts Two and Four of the complaint with some reluctance.

¶ 72. The evidence regarding the amounts Attorney Felli charged the R.W. estate and trusts is very disturbing. The OLR's expert witness, Attorney Perlson, opined that the fees charged by Attorney Felli were unreasonable and clearly excessive. The referee said Attorney Felli's testimony about the chaotic state of affairs in the R.W. case was unrefuted. While the referee

agreed that the accounting provided by Attorney Felli in the R.W. matter was incomplete and confusing, and that some of the evidence strongly suggested Attorney Felli misappropriated funds, he ultimately concluded that the OLR failed to prove by clear, satisfactory, and convincing evidence that Attorney Felli engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

¶ 73. As previously noted, the referee found that Attorney Felli engaged in misconduct by failing to fully cooperate with the OLR in its investigation of the R.W. case, and the referee speculated that Attorney Felli might have made a conscious tradeoff and decided not to provide complete information to the OLR to prevent the referee from finding that Attorney Felli mishandled R.W.'s funds. We concur with the referee's comment that it is possible such a conscious tradeoff was made, and we are deeply troubled by that possibility. However, we are required to adopt a referee's findings of fact unless they are clearly erroneous and based on the record before us we are unable to say that the referee's findings of fact with respect to Counts Two and Four of the complaint were clearly erroneous. Consequently, we are required to adopt the findings of fact as well as the resulting conclusions of law.

¶ 74. Even though we adopt all of the referee's findings of fact and conclusions of law, we disagree with the referee as to the appropriate sanction. The misconduct found by the referee is extremely serious. Along with the two financial planners, Attorney Felli targeted vulnerable elderly women and either directly or indirectly through the financial planners solicited his service in various fiduciary capacities. Unlike the situation in *Gulbankian,* Attorney Felli did not have a close personal relationship with any of these clients. At the

time Attorney Felli drafted the will and trust for R.W., she already had two trustees. After the co-trustees divorced, the husband could have continued as the sole trustee and there was no particular reason to appoint Attorney Felli. L.D. had a brother who had been named a fiduciary in her prior wills. W.G. had previously named her friend, I.B., as her fiduciary. There is no reason those persons could not have continued to act in a fiduciary capacity, nor is there any evidence that Attorney Felli discussed the possibility of naming those persons or naming an institution to serve in the fiduciary capacities ultimately filled by Attorney Felli himself.

¶ 75. In light of the seriousness of Attorney Felli's misconduct, we believe that the 18–month suspension recommended by the referee is too lenient. Instead, given the egregiousness of Attorney Felli's behavior, we conclude that a three-year suspension of his license to practice law in this state is called for. We hope that that period of suspension will help him understand and accept the responsibilities of the legal profession and the ethical constraints placed upon its practice. In addition, we agree with the referee that Attorney Felli should pay the full costs of the proceeding.[11]

¶ 76. IT IS ORDERED that the license of Attorney Jay Andrew Felli to practice law in Wisconsin is suspended for three years commencing July 27, 2006, as discipline for his professional misconduct.

---

[11] In a motion objecting to costs, Attorney Felli argues that because the referee found that the OLR failed to meet its burden of proof with respect to five of the 15 counts alleged in the complaint this court should exercise its discretion and award something less than the full costs. We decline to depart from the general practice of imposing the full costs on a disciplined lawyer.

¶ 77. IT FURTHER ORDERED that within 60 days of the date of this order, Attorney Jay Andrew Felli pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Jay Andrew Felli to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 78. IT IS FURTHER ORDERED that Jay Andrew Felli comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.